Billy Dewayne WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–01–00713–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 31, 2002.

Judith Martin Prince, Houston, TX, for Appellant.

Dan McCrory, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and JENNINGS.

## OPINION

RADACK, Chief Justice.

After his motion to suppress evidence was denied, appellant, Billy Dewayne Wilson, pleaded guilty, without an agreed punishment recommendation, to possession with intent to deliver cocaine weighing at least 400 grams. The trial court found appellant guilty and assessed punishment at 15 years' confinement. Appellant contends the trial court erred by denying his motion to suppress evidence seized from his co-defendant's hotel room. The State, however, contends that appellant has no

standing to object to the search. We affirm.

## Facts

The following facts are derived from a search warrant affidavit executed by Houston Police Officer J.F. Boody. Officer S. Januhowski of the Houston Police Department Narcotics Division received information that Renita M. Baldwin was transporting drugs from Houston to Alabama twice a month. Thereafter, Officer Januhowski set up surveillance of Baldwin at a motel room where she had been staying with appellant. While watching the couple, the police saw a man, presumably appellant, arrive at the hotel room and enter with a bulky object under his arm. The object was covered with a leather jacket, and when appellant left the room a short time later, the leather jacket was hanging loosely from his arm.

Officer Januhowski called Officer M.E. Smith and asked that Smith's narcotics detection canine, Gruffy, inspect the doors of rooms 102–111. Gruffy alerted on only one room—number 109—the room in which Baldwin and appellant had been staying.

Armed with this information, the officers obtained a search warrant for room 109. Inside the room, the police discovered the cocaine and arrested appellant and Baldwin.

## Standing

The State contends that appellant has no standing to object to the search of the hotel room because the room was registered to appellant's co-defendant, Renita Baldwin. We disagree.

An accused has standing to contest a search under the Fourth Amendment only if he had a legitimate expectation of privacy in the place that government officials or agents invaded. *Rakas v. Illinois,* 439 U.S. 128, 144, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Granados v. State,* 85 S.W.3d 217, 222–23 (Tex.Crim.App.2002). A defendant, who bears the burden of demonstrating a legitimate expectation of privacy, can do so by showing that he had a subjective expectation of privacy in the place invaded that society is prepared to recognize as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Granados,* 85 S.W.3d at 223. In determining whether a defendant's claim of privacy is objectively reasonable we may consider whether (1) the defendant had a property or possessory interest in the place searched; (2) he was legitimately in the place searched; (3) he had complete dominion or control and the right to exclude others; (4) prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) he put the place to some private use; and (6) his claim of privacy is consistent with historical notions of privacy. *Granados,* 85 S.W.3d at 223; *Villarreal v. State,* 935 S.W.2d 134, 138 (Tex.Crim.App.1996).

The State, citing *Clapp v. State,* argues that appellant had no standing to object to the search of Renita Baldwin's hotel room because he was not the registered guest. 639 S.W.2d 949, 952–53 (Tex.Crim.App. 1982). In *Clapp,* the police went to a hotel room registered to Susan Otts to execute an arrest warrant for Joel Hamm. *Id.* at 952. Otts gave the police permission to search the suite for Hamm. *Id.* As one of the officers was searching the suite, he encountered the appellant, Clapp. *Id.* Clapp accompanied the officer as he searched the rest of the suite. *Id.* One bedroom appeared to be unoccupied, but

the bed in the second bedroom was unmade and Clapp's watch was on the dresser. *Id.* While the officer was checking the second bedroom, he heard water running in the adjoining bathroom. *Id.* When the officer entered the bathroom, he saw two tinfoil packets, later determined to contain narcotics, swirling in the toilet bowl. *Id.* at 952–53. The officer retrieved the packets and arrested Clapp for possession of amphetamine. *Id.* The Court of Criminal Appeals held that Clapp did not have standing to object to the search because the evidence showed that "he was merely a guest in Ott's motel room." *Id.* at 953.

However, the *Clapp* opinion was decided before the United States Supreme Court decision in *Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 1689, 109 L.Ed.2d 85 (1990). In *Minnesota v. Olson,* the Supreme Court held that an overnight guest has a legitimate expectation of privacy in his host's home. 495 U.S. at 99–100, 110 S.Ct. 1684. In so holding, the Court stated:

> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.
>
> . . . .
>
> That the guest has a host who has ultimate control of the house is not inconsistent with the guest having a legitimate expectation of privacy. The houseguest is there with the permission of his host, who is willing to share his house and his privacy with his guest.

*Id.*

■ We are aware that in *Minnesota v. Olson,* the defendant was an overnight guest in someone else's home; whereas in this case, the defendant is the overnight guest in the hotel room of a registered guest. Nevertheless, we believe the reasoning of *Minnesota v. Olson* is equally applicable in this situation. The Supreme Court has recognized that a registered guest at a hotel has a reasonable expectation of privacy in the room that he or she has rented and, consequently, is entitled to constitutional protection against unreasonable searches and seizures there. *See Stoner v. California,* 376 U.S. 483, 490, 84 S.Ct. 889, 893, 11 L.Ed.2d 856 (1964). We believe the rationale behind *Minnesota v. Olson* compels the conclusion that an overnight guest of a registered hotel guest shares the registered guest's reasonable expectation of privacy in the room.[1]

While this is a novel issue for this Court, it has been addressed by other jurisdictions. *See United States v. Wilson,* 36 F.3d 1298, 1303 (5th Cir.1994) (holding that overnight guest of hotel resident had standing to object to search of hotel room);

---

1. We are aware of cases holding that a hotel room guest's reasonable expectation of privacy ceases once the rental period for the hotel room has expired. *See Granados,* 85 S.W.3d at 225 (*citing United States v. Kitchens,* 114 F.3d 29, 31–32 (4th Cir.1997)). In such cases, the registered guest no longer has the hotel's permission to remain in the room, which defeats his expectation of privacy. *See id.* This leads to the question of whether an overnight guest of a registered guest can have a reasonable expectation of privacy if the ultimate host (the hotel) has prohibited his presence in the hotel room. We need not decide this issue today because there is nothing in the record to suggest that appellant's presence in Baldwin's hotel room was prohibited by the hotel.

*United States v. Gordon,* 168 F.3d 1222, 1226 (10th Cir.1999) (recognizing that registered occupant of hotel room or overnight guest of registered occupant have standing to object to search); *United States v. Carr,* 939 F.2d 1442, 1446 (10th Cir.1991) (holding defendant had no standing to object to search of hotel room absent evidence showing that he was overnight guest of registered guest); *Johnson v. Nagle,* 58 F.Supp.2d 1303, 1379 (N.D.Ala.1999) (holding overnight guest of registered hotel guest had standing to object to search of hotel room): *People v. Olson,* 198 Ill.App.3d 675, 144 Ill.Dec. 806, 556 N.E.2d 273, 277 (1990) (same); *People v. Ali,* 131 A.D.2d 857, 858, 517 N.Y.S.2d 216 (1987) (holding co-occupant with registered hotel guest shared reasonable expectation of privacy in hotel room); *State v. McMillian,* 147 N.C.App. 707, 557 S.E.2d 138, 142–43 (2001) (holding that absent evidence defendant planned on staying overnight, he had no standing to object to search of hotel room registered to another person); *State v. Coleman,* 118 Ohio App.3d 522, 693 N.E.2d 825, 827 (1997) (holding defendant had no standing to object to search of hotel room because he was not a registered guest or an overnight guest).

■ In this case, there was evidence that appellant was traveling with Renita Baldwin, that Baldwin rented the hotel room in her name, and that appellant shared the room with Baldwin for two nights. As Baldwin's overnight guest, we hold that appellant has shown a sufficient possessory interest in the hotel room to give him a reasonable expectation of priva-

cy, which is consistent with historical notions of privacy.[2] Therefore, we conclude that appellant has standing to object to the search of the hotel room registered to Baldwin.

### The Motion to Suppress Evidence

Appellant contends the trial court erred by denying his motion to suppress evidence because (A) the affidavit supporting the search warrant was inadequate; (B) the warrant was based on an illegal search by the narcotics-detecting dog; and (C) he was illegally arrested.

### A. The Affidavit

In points of error one and two, appellant contends the affidavit supporting the search warrant was inadequate for the following two reasons: (1) its contents are not based on the affiant's personal knowledge; and (2) the statements in the affidavit are conclusory.

■ A search warrant must be supported by an affidavit setting forth substantial facts establishing probable cause for its issuance. *See Davis v. State,* 27 S.W.3d 664, 667 (Tex.App.—Waco 2000, pet. ref'd); *Mayfield v. State,* 800 S.W.2d 932, 934 (Tex.App.—San Antonio 1990, no pet.). "Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued." *Davis,* 27 S.W.3d at 667; *see also Mayfield,* 800 S.W.2d at 934. We examine the four corners of the affidavit to determine whether

**2.** We note that the Supreme Court has limited the *Olson* holding somewhat by holding that in order to establish a reasonable expectation of privacy in a third-party's home, a person must show that he or she was a guest on the premises for a personal reason, rather than for a strictly commercial purpose. *See*

*Minnesota v. Carter,* 525 U.S. 83, 92, 119 S.Ct. 469, 474, 142 L.Ed.2d 373 (1998). However, in this case, there is nothing to suggest that appellant's reason for staying overnight in the hotel room with Baldwin was for a strictly commercial purpose. As such, *Minnesota v. Carter* is not applicable to this case.

probable cause exists. *See Davis*, 27 S.W.3d at 667; *Mayfield*, 800 S.W.2d at 934. "Reasonable inferences may be drawn from the affidavit, however, and the affidavit must be interpreted in a common sense and realistic manner." *Davis*, 27 S.W.3d at 667; *see also Mayfield*, 800 S.W.2d at 935.

■■■■ We review a trial court's ruling on a motion to suppress using the "bifurcated" standard of review set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim. App.1997). *See Burke v. State*, 27 S.W.3d 651, 654 (Tex.App.—Waco 2000, pet. ref'd); *Lane v. State*, 971 S.W.2d 748, 752 (Tex. App.—Dallas 1998, pet. ref'd). "Thus, we give almost total deference to the trial court's determination of historical facts that depend on credibility choices, but review its application of the law of probable cause *de novo*." *Burke*, 27 S.W.3d at 654. Because credibility is not an issue when reviewing the four corners of an affidavit, we review the trial court's ruling de novo. *Id.; Lane*, 971 S.W.2d at 752. In conducting this de novo review, we give great deference to the magistrate's decision to issue the warrant and determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for determining that there was probable cause. *Lane*, 971 S.W.2d at 752.

### 1. Personal knowledge of affiant

■■■■ Appellant argues that the affidavit is insufficient because it is not based on the personal knowledge of the affiant. Specifically, appellant contends that the affiant, J.F. Boody, a member of the Houston Police Department's Narcotics Division, is not describing his own observations, but those of another officer, S. Januhowski, and that the affidavit does not expressly state that the two officers were cooperating together on the investigation.

■■■■ When there has been cooperation between law enforcement agencies or between members of the same agency, the sum of the information known to the officers involved is to be considered in determining probable cause. *Woodward v. State*, 668 S.W.2d 337, 344 (Tex.Crim.App. 1982). The affidavit in this case provides that both Officers Januhowski and Boody are members of the Houston Police Department, and that both are assigned to the Narcotics Division of that department. The affidavit then details Officer Januhowski's surveillance of appellant and Baldwin and the narcotics detection dog's alert on the door to their hotel room. From this information, the magistrate could reasonably have drawn the inference that Boody and Junuhowski were cooperating on the case, which would fulfill the requirement that Boody's affidavit be based on personal knowledge. *See United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965) (holding that detailed observations recounted in affidavit were sufficient to support inference that source of information in affidavit was governmental investigators working on investigation with affiant); *United States v. Reed*, 700 F.2d 638, 641 (11th Cir.1983) (holding that because information in affidavit was clearly the result of governmental investigation, personal knowledge of affiant was provided by governmental agents cooperating on the case).

### 2. Conclusory Statements

■■■■ Next, appellant contends that the statements by the affiant, Officer Boody, are conclusory and, therefore, insufficient to show probable cause. *See State v. Anderson*, 917 S.W.2d 92, 95 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (stating that supporting affidavit must contain more than mere conclusory statements by affiant). However, conclusory statements do not invalidate a sup-

porting affidavit if the remaining, non-conclusory portions of the affidavit provide probable cause. *See Massey v. State*, 933 S.W.2d 141, 147–48 (Tex.Crim.App.1996).

■ Regardless of any conclusory statements that may have been in the affidavit, the remaining portions of the affidavit stated, in a non-conclusory manner, that Officer Januhowski called a canine officer and his narcotics detection dog to the hotel and that the dog alerted on the door of room 109. This alert by the dog provided sufficient probable cause.[3] *See Harrison v. State*, 7 S.W.3d 309 311 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

Accordingly, we overrule points of error one and two.

## B. Sniff by Narcotics–Detecting Dog

In points of error four and five, appellant contends the dog sniff at the door of the hotel room was an illegal search under *Kyllo v. United States*, 533 U.S. 27, 37, 121 S.Ct. 2038, 2045, 150 L.Ed.2d 94 (2001). In *Kyllo*, the police, while standing on a public street, used a thermal imaging device to determine if the amount of heat emanating from Kyllo's home was consistent with the type of high-intensity lamps typically used for growing marihuana indoors. 533 U.S. at 28, 121 S.Ct. at 2038. The Supreme Court held that this was an unlawful search by stating:

> Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is

a "search" and is presumptively unreasonable without a warrant.

*Kyllo*, 533 U.S. at 40, 121 S.Ct. at 2046.

■ We believe that *Kyllo* is distinguishable for two reasons. First, unlike the search in *Kyllo*, in this case, appellant's home was not involved; instead, the dog sniffed the exterior door of a room at hotel open to the public. The dog walked along a passageway that was used by guests to access their rooms. We hold that appellant had no expectation of privacy in the area exterior to the door of his hotel room.

■ Second, expectations differ when certain devices are employed for surveillance purposes. *See United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (recognizing the canine sniff as a relatively unintrusive method of gathering information due to its limitations in detecting only contraband); *Walsh v. State*, 743 S.W.2d 687, 689 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd). In *Kyllo*, the surveillance device used was a sophisticated piece of technology that revealed information, other than the presence of contraband, about the interior of Kyllo's home. *See Kyllo*, 533 U.S. at 38, 121 S.Ct. at 2045.

■ Here, the dog's sniff did not explore the details of the hotel room; the sniff revealed nothing about the room other than the presence of cocaine. There is no legitimate expectation or interest in "privately" possessing cocaine. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984); *United States v. Reed*, 141 F.3d 644, 650 (6th Cir.1998).

---

**3.** Appellant argues that the description of the dog's alert is not sufficient to establish probable cause because the affidavit does not show that the dog was properly trained and reliable. However, the issue of the dog's reliability was not raised in appellant's motion to suppress or at the suppression hearing. Therefore, this argument has not been preserved for appellate review. TEX. R. APP. P. 52(a).

Because *Kyllo* is distinguishable, we hold that a dog sniff of the area exterior to the door of a hotel room is not a search under the Fourth Amendment[4] or the Texas Constitution.[5] *See Josey v. State*, 981 S.W.2d 831, 845 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd).

Accordingly, we overrule points of error four and five.

### C. Appellant's Arrest

 In point of error three, appellant contends he was illegally arrested. However, even if the arrest was unlawful, we would not reverse because no evidence was obtained as a result of appellant's arrest. *See Ellis v. State*, 714 S.W.2d 465, 470 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd) (stating that unlawful arrest alone will not invalidate conviction unless fruits of the unlawful arrest were admitted at trial). The evidence in this case was obtained, not as a result of appellant's arrest, but as a result of the search warrant, which we have already held was valid.

Accordingly, we overrule point of error three.

### Conclusion

We affirm the judgment.

---

**4.** U.S. Const. amend. IV.

**5.** Tex. Const. art. I, § 9.