**Traci Lee NILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 05–01–01686–CR, 05–01–01713–CR.**

Court of Appeals of Texas, Dallas.

May 22, 2003.

John P. Knouse, Knouse & Knouse, Dallas, for appellant.

John Roach, Criminal District Attorney, McKinney, for the State.

Before Justices WRIGHT, BRIDGES and O'NEILL.

**OPINION**

Opinion by Justice WRIGHT.

Traci Lee Nilson appeals two convictions for possession of a controlled substance. Appellant entered open pleas of guilty. In cause number 05–01–01686–CR, the trial court placed appellant on ten years' com-

munity supervision without an adjudication of guilt for possession of gamma hydroxybutyrate.[1] In cause number 05–01–01713–CR, the trial court sentenced appellant to five years' imprisonment for possession of amphetamine. In two issues, appellant asserts the search warrants were invalid and the trial court erred in denying her motions to suppress. We affirm.

## BACKGROUND

On September 28, 1999, Carrollton police officer Jeremy Chevellier received a tip from a confidential informant about drug trafficking at appellant's home. On October 25, 1999, Chevellier collected and inspected appellant's trash that was set out near the alley waiting to be picked up. Among the items found in appellant's trash were (1) nineteen clear plastic baggies each containing either cocaine or methamphetamine residue, (2) two modified smoking pipes with burnt residue, (3) several pieces of aluminum foil with burnt residue, (4) drug notes, and (5) address labels showing that appellant resided at that address. Chevellier also collected appellant's trash the following day and found several pieces of aluminum foil with burnt residue and labels with handwritten dollar amounts. With this information, Chevellier obtained a search warrant for appellant's residence on October 26, 1999. The warrant was executed the same day and Chevellier seized 12.4 grams of methamphetamine and 122.2 grams of marijuana. Appellant was subsequently indicted for possessing amphetamine on October 26, 1999.

On April 11, 2000, Chevellier returned to appellant's residence for the purpose of arresting her on two outstanding warrants.

When he and his partner, Robert Hay, did not get an answer at the front door, Chevellier went around back, entered the garage, and knocked on the garage door. Appellant would not answer the door. Both Chevellier and Hay testified that there were trash bags lined up along the fence from the alley almost all the way up to appellant's house. As with the previous two searches of appellant's trash, Chevellier collected two trash bags left for pickup right next to the alley behind appellant's home. Inside the bags were numerous clear plastic baggies containing methamphetamine residue and mail addressed to appellant at that residence. Based on this information contained in Chevellier's affidavit, a second search warrant was issued on April 11, 2000 and was executed that same day. The results of this search led to the two-count indictment charging appellant with possession of gamma hydroxybutyrate and methamphetamine.

### Standard of Review

We review a motion to suppress under the standard set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997). In deciding a motion to suppress evidence seized pursuant to a search warrant, the issue before the trial court is the propriety of the magistrate's finding that there is probable cause to issue the search warrant. *Lane v. State*, 971 S.W.2d 748, 752 (Tex.App.-Dallas 1998, pet. ref'd). Whether the facts alleged in a probable cause affidavit are sufficient to support issuance of a search warrant is determined by examining the totality of the circumstances. *Ramos v. State*, 934 S.W.2d 358, 362 (Tex. Crim.App.1996). The allegations in a probable cause affidavit are sufficient if

---

1. This cause involved a two-count indictment. Count two of the indictment charged appellant with possession of methamphetamine. She received a five-year sentence under count two. Although appellant's notice of appeal includes this count, she makes no reference to count two in her brief.

they justify a conclusion that the object of the search is probably on the premises. *Ramos v. State*, 31 S.W.3d 762, 765 (Tex. App.-Houston [1st Dist.] 2000, no pet.). When a trial court's ruling on a motion to suppress turns on the credibility of witnesses, we give almost total deference to a trial court's determination because of its fact-finding role. *Guzman*, 955 S.W.2d at 89; *Lane*, 971 S.W.2d at 752. We review de novo mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses. *Lane*, 971 S.W.2d at 752.

In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). As the trier of fact, the trial court may disbelieve testimony even if it is uncontroverted. *Johnson v. State*, 871 S.W.2d 744, 748 (Tex.Crim.App.1994).

### Retrieval of Trash

■ In her second issue, appellant asserts the evidence obtained from the warrantless trash searches was obtained illegally and, therefore, was not a proper basis for issuance of the subsequent search warrants. The evidence obtained pursuant to the search warrants should be suppressed, appellant argues, because it was the fruit of illegal warrantless searches of her trash.

■ Where an illegal warrantless search provides the basis for a search warrant, evidence obtained pursuant to the search warrant will be suppressed. *See State v. Guo*, 64 S.W.3d 662, 668 (Tex. App.-Houston [1st Dist.] 2001, no pet.) (where information obtained from two illegal warrantless searches used to establish probable cause for the warrants, evidence obtained pursuant to those warrants was properly suppressed); *State v. Aguirre*, 5 S.W.3d 911, 914 (Tex.App.-Houston [14th Dist.] 1999, no pet.) (because evidence supporting search warrant was illegally obtained, evidence recovered by executing the warrant was fruit of illegal search). Conversely, where an underlying warrantless search is legal and serves as probable cause for obtaining a warrant, evidence obtained by executing the warrant is admissible. *See Wilson v. State*, 98 S.W.3d 265, 272 (Tex.App.-Houston [1st Dist.] 2002, pet. filed). In *Wilson*, police officers, without a warrant, used a narcotics detection canine to inspect certain hotel room doors. *Id.* The canine detected the smell of narcotics. The officers used this information to obtain a search warrant. The court held Wilson had no expectation of privacy in the area outside of his hotel room door. Finding the warrantless search lawful, the court upheld the denial of Wilson's suppression motion. *Id.*

In order to determine the propriety of the magistrate's issuance of the search warrants, we must first determine the lawfulness of the warrantless trash searches upon which the warrants were based. Following the hearing on appellant's motion to suppress, the trial court implicitly found that the warrantless searches were lawful.

■ Appellant contends the warrantless searches of her trash violated her Fourth Amendment right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV. The United States Supreme Court has held that the Fourth Amendment does not prohibit the warrantless search and seizure of garbage left for collection outside the curtilage of the home. *California v. Greenwood*, 486 U.S. 35, 41, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). "Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80

L.Ed.2d 214 (1984). In *Greenwood*, the garbage was placed in its normal location for garbage pickup, next to the curb on the street. In upholding the search and seizure of Greenwood's garbage, the Court held that any expectation of privacy in the garbage was not objectively reasonable because of the extent to which the garbage was exposed to the public. *Greenwood*, 486 U.S. at 41, 108 S.Ct. 1625.

Prior to *Greenwood*, many federal courts addressed the issue of warrantless searches of garbage. The Fifth Circuit addressed the issue in *United States v. Vahalik*, 606 F.2d 99 (5th Cir.1979). In *Vahalik*, the police seized garbage Vahalik had placed at the "edge of the street" for collection. *Id.* at 100. The contents of the garbage bags enabled the police to obtain a search warrant for Vahalik's home. The court held that Vahalik's Fourth Amendment rights had not been violated because once he placed the garbage for collection, he had no reasonable expectation of privacy to it. *Id.* at 101.

In *United States v. Kramer*, 711 F.2d 789 (7th Cir.1983), the police removed Kramer's garbage bags from just inside a knee-high, single chain of metal fence that ran along a street curb some thirty feet from the front of the house. The court recognized that it was necessary for the police to trespass a few feet onto Kramer's property to retrieve the garbage bags. Nevertheless, the court held the police did not violate any interest the Fourth Amendment was designed to protect. The trespass was not a "threat to the peace and quiet of defendant's home. The trespass did not interfere with defendant's enjoyment of his front yard—the police emptied the trash bags at the station, not on defendant's lawn—nor did it interfere with

the weekly routine defendant followed to dispose of his garbage—the police unobtrusively picked up the trash bags on the same days defendant's regular garbage collector would have." *Id.* at 794. Both *Vahalik* and *Kramer* are cited with approval by the Supreme Court in *Greenwood* as reinforcing its conclusion that "society would not accept as reasonable respondents' claim[s] to an expectation of privacy in trash left for collection in an area accessible to the public."[2] *Greenwood*, 486 U.S. at 42, 108 S.Ct. 1625.

Courts considering this issue after *Greenwood* have overwhelmingly held that whether the garbage is located within the home's curtilage is not the determining factor. As one court noted, "[w]hether the officers violated the Fourth Amendment does not depend solely on curtilage." *United States v. Long*, 176 F.3d 1304, 1308 (10th Cir.1999). In *Long*, the garbage seized was on top of a trailer with a camper shell between the garage and the alley. Atop the trailer was the regular location where Long placed his garbage for pickup. The court held the trailer was located outside the curtilage of the residence. *Id.* Further, the court concluded, even if the trash bags were within the curtilage of residence, they were readily accessible and visible from a public thoroughfare, thus defeating Long's Fourth Amendment claim. *Id.* at 1309.

■ In *United States v. Hedrick*, 922 F.2d 396 (7th Cir.1991), Hedrick's garbage was located halfway up the driveway of his home, somewhat nearer the sidewalk than the garage. The court concluded that Hedrick's garbage was located within the curtilage of his home. *Id.* at 400. However, the inquiry did not stop there. The

**2.** We recognize that *Vahalik* rested upon the theory of abandonment whereas *Greenwood* did not mention this theory.

court held that the "proper focus under *Greenwood* is whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable." *Id.* at 400. "Garbage placed where it is not only accessible to the public but likely to be viewed by the public is 'knowingly exposed' to the public for Fourth Amendment purposes." *Id.* The court concluded that "[b]ecause the distance between the garbage cans and the public sidewalk was relatively short, the garbage was collected by the garbage service from that location, and the garbage cans were clearly visible from the sidewalk, we hold that Hedrick possessed no reasonable expectation of privacy in the garbage." *Id.* at 400; *see also United States v. Shanks,* 97 F.3d 977, 980 (7th Cir.1996) (warrantless search of garbage bags accessible and visible from the alley upheld); *United States v. Wilkinson,* 926 F.2d 22, 27 (1st Cir.1991), *overruled on other grounds by Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995) (warrantless search of trash bags placed on the homeowner's lawn next to the curb upheld); *United States v. Trice,* 864 F.2d 1421, 1424 (8th Cir.1988) (warrantless search of garbage bags placed within the curtilage of the property but accessible to the public upheld).

The only Texas case reported with similar facts addressing this issue is *Levario v. State,* 964 S.W.2d 290, 296 (Tex.App.-El Paso 1997, no pet.). In *Levario,* the seized garbage bags were located within the home's curtilage, and they were also located in the normal place for collection. However, in *Levario,* unlike our facts, the garbage collectors, not the police, collected the garbage bags as usual and then turned them over to the police. The El Paso court of appeals concluded Levario had no reasonable expectation of privacy in discarded trash even if it were within the

curtilage of his home. *Id. Levario* is in line with the post-*Greenwood* federal cases cited above. Therefore, we agree with the El Paso court of appeals that once a person places his trash in the location for pickup by the trash collectors, where it is accessible to the public and likely to be viewed by the public, that person no longer has an objectively reasonable expectation of privacy in the trash. Further, it makes no difference whether the police or the garbage collector retrieves the bags. Once a person places trash bags containing contraband next to a public thoroughfare for collection, he exposes them to the public-at-large, including the police. *See Shanks,* 97 F.3d at 980.

Appellant and the State's witnesses presented conflicting testimony as to the location of the garbage bags at the time Chevellier collected them. Chevellier testified that on each of the three occasions he collected appellant's garbage, it was located on her driveway within two feet of the alley. He admitted that on April 11, 2000, he entered appellant's garage to knock on her back door. However, he denied taking any garbage out of her garage. Hay corroborated Chevellier's testimony that on April 11, he took two trash bags located right next to the alley.

Appellant testified she kept her trash in the garage until the garbage truck arrived. Trash was collected on Tuesdays and Fridays. Appellant said she did not put any trash out on Monday, October 25, 1999. Appellant testified she missed the trash collector on Tuesday, April 11, and that she never took the trash bags out of her garage on that day.

The trial judge heard the conflicting testimony and observed the demeanor of the witnesses. With respect to the trash searches on October 25 and 26, the trial judge believed Chevellier's testimony that

appellant had placed the garbage bags for collection by the trash collectors and Chevellier had personally retrieved the bags from that location, and that he did not retrieve bags from the garage. The evidence supports the trial court's conclusion. Under these facts, appellants's garbage bags were so readily accessible to the public that their contents were exposed to the public for Fourth Amendment purposes. That being so, the trial court correctly applied the law to these facts. Therefore, appellant had no reasonable expectation of privacy in her garbage located next to the alley for collection. *See Greenwood*, 486 U.S. at 41, 108 S.Ct. 1625.

As to the April 11 search of appellant's trash, the trial court believed Chevellier's testimony that he collected two trash bags that were located right next to the alley waiting to be picked up by the trash collectors. The trial court did not believe appellant's testimony that Chevellier collected her trash from inside her garage. As with the October trash searches, appellant's trash on April 11 was readily accessible to the public, thus defeating any Fourth Amendment claim.

We conclude the trial court did not err in concluding the warrantless searches of the trash that provided the basis for obtaining the two search warrants were legal. *See Wilson*, 98 S.W.3d at 272. Accordingly, considering the totality of the circumstances, we conclude Chevellier's affidavits detailing the contents of appellant's trash provided the magistrate with a substantial basis for concluding probable cause existed for issuance of the search warrants. *See Lane*, 971 S.W.2d at 751; *State v. Raymer*, 786 S.W.2d 15, 17 (Tex. App.-Dallas 1990, no pet.). Accordingly, the trial court did not err in overruling appellant's motion to suppress on these grounds.

**Criminal Trespass**

■ Appellant also contends the retrieval of her garbage bags was illegal because Chevellier committed a criminal trespass to retrieve them. To support a conviction for criminal trespass, the State must show a person entered or remained on the property of another without effective consent and received notice to depart but failed to do so. *See* Tex. Pen.Code Ann. § 30.05(a)(2) (Vernon 2003).

Here again, the trial court heard conflicting testimony as to whether Chevellier had notice to depart. Appellant testified that, in response to some vandalism, she posted a sign on her fence warning people not to kick down her fence and trespass onto her property. Chevellier denied seeing any sign. The trial court's determination of this issue involved the evaluation of the credibility of the witnesses. The court resolved the conflict in favor of the State and implicitly found appellant did not have a "no trespassing" sign posted on her fence. The evidence supports the trial court's finding. Therefore, we must defer to the trial court's resolution of that factual determination. *See Guzman*, 955 S.W.2d at 89; *Lane*, 971 S.W.2d at 752.

We overrule appellant's second issue. In her first issue, appellant contends the confidential informant's tip was stale and unreliable and, therefore, could not serve as a basis to support the search warrants. Because we conclude the trash retrieved from the warrantless searches provided the magistrate with a substantial basis for concluding probable cause existed for issuance of the search warrants, we do not address this issue. *See* Tex.R.App. P. 47.1.

We affirm the trial court's judgments.