Opinion filed September
29, 2011

 

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00301-CR

                                                    __________

 

                             KEENE
WESLEY HUNTER, Appellant

                                                             V.

                                      STATE
OF TEXAS, Appellee



 

                                    On
Appeal from the 91st District Court

                                                          Eastland
County, Texas

                                                      Trial
Court Cause No. 20843

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Keene Wesley Hunter of possession of four grams or more but less
than 200 grams of cocaine with the intent to deliver.  Pursuant to a punishment
agreement between the State and appellant, the trial court assessed appellant’s
punishment at thirty-two years confinement.  We affirm.

Issues
on Appeal

            Appellant
presents three issues for review.  In his first two issues, appellant
challenges the legal and factual sufficiency of the evidence to support his
conviction.  Specifically, appellant contends that the evidence was legally and
factually insufficient to establish that he knowingly and intentionally
possessed cocaine with the intent to deliver.  In his third issue, appellant
argues that the trial court erred by denying his motion to suppress evidence
that was obtained as a result of his allegedly illegal arrest.

Sufficiency
of the Evidence Standard of Review

            We
note at the outset of our analysis that the Texas Court of Criminal Appeals has
now held in Brooks v. State, 323 S.W.3d 893 (Tex. Crim. App. 2010), that
there is “no meaningful distinction between the Jackson v. Virginia[1]
legal-sufficiency standard and the Clewis[2]
factual-sufficiency standard”; that the Jackson v. Virginia standard is
the “only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt”; and that “[a]ll
other cases to the contrary, including Clewis, are overruled.”  Brooks,
323 S.W.3d at 895, 902, 912 (footnotes added).  Accordingly, a challenge to the
factual sufficiency of the evidence is no longer viable.  We also note that
appellant did not have the benefit of the opinion in Brooks when this
case was briefed.  We will review appellant’s sufficiency challenges under the
legal sufficiency standard set forth in Jackson v. Virginia.  Under this
standard, we must review all of the evidence in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307; Brooks, 323 S.W.3d at 899.

            In a
prosecution for possession of a controlled substance, the State must prove that
the accused exercised care, custody, control, or management over the substance
and that the accused knew the substance was contraband. Tex. Health & Safety Code Ann. § 481.002(38) (Vernon
2010); Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); Martin
v. State, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988).  The State does not
have to prove that the accused had exclusive possession of the contraband;
joint possession is sufficient to sustain a conviction.  Cude v. State,
716 S.W.2d 46, 47 (Tex. Crim. App. 1986).  When the accused is not shown to
have had exclusive possession of the place where the contraband was found, the
evidence must link the accused to the contraband and establish that the
accused’s connection with the drug was more than fortuitous. Evans, 202
S.W.3d at 161-62; Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App.
1981).  Courts have recognized a number of factors that may link an accused to
the drug.  Evans, 202 S.W.3d at 162 n.12.  The legal issue with respect
to such “links” is “whether there was evidence of circumstances, in addition to
mere presence, that would adequately justify the conclusion that the defendant
knowingly possessed the substance.”  Evans, 202 S.W.3d at 161-62 &
n.9.  No set formula exists to dictate a finding of links sufficient to support
an inference of knowing possession of contraband.  Isbell v. State, 246
S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.); Taylor v. State, 106
S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.).  It is not the number of
links that is dispositive but, rather, the logical force of all the evidence,
direct and circumstantial.  Evans, 202 S.W.3d at 162.

The
Evidence at Trial

            On
May 17, 2005, at about 1:30 p.m., Department of Public Safety Corporal David
Foster and Trooper Tim Pitts were patrolling Interstate 20 in the westbound
lanes, near mile marker 339, in Eastland County.  Corporal Foster was
driving the patrol car, and Trooper Pitts was a passenger in the car.  The
officers observed a 1999 Chevrolet Tahoe traveling in the passing lane of the
eastbound lanes of Interstate 20.  The officers believed that the tint on the
Tahoe’s windows was darker than the legal limit.  Corporal Foster entered the
median of the highway so that he could turn around and stop the Tahoe.  When he
entered the median, the driver of the Tahoe abruptly exited the highway by
driving across the outside eastbound lane of the highway and using the Highway
6 exit ramp.  Corporal Foster testified that the driver of the Tahoe did not
slow down as he exited the highway.

The
officers believed that the driver of the Tahoe had seen them turning around in
the median and was attempting to elude them.  Corporal Foster explained that
drivers usually do not attempt to exit the highway directly from the inside
lane to the exit ramp.  Corporal Foster said that the driver of the Tahoe
exited the highway in a reckless manner in an effort to get away from the
officers.  After exiting, the driver stopped at the stop sign at the
intersection of the service road and Highway 6, turned right onto Highway 6
without activating his turn signal, and then turned left into the Red Star truck
stop parking lot without activating a turn signal.  The driver drove through
the parking lot at a dangerously high rate of speed and then abruptly stopped
at the gas pumps.  Corporal Foster turned on the flashing lights on the patrol
car and stopped behind the Tahoe.  The video camera in the patrol car activated
when Corporal Foster turned on the lights.

            Two
men exited the vehicle. The driver walked toward the Tahoe’s gas tank, and the
passenger walked toward the entrance of the convenience store of the truck
stop.  Trooper Pitts stopped the passenger from entering the store. Corporal
Foster approached the driver.  The driver glanced up and then looked down.  He
would not maintain eye contact with Corporal Foster.  The driver was
elusive and did not pay attention to what Corporal Foster was asking him.  The
driver opened the lid to the Tahoe’s gas tank.  The officers believed that the
passenger wanted to go inside the store to hide or to get rid of something.

The
officers determined that appellant was the driver of the Tahoe and that Willy
Charles Williams was the passenger in the Tahoe.  Appellant and Williams were
cousins.  The Tahoe was registered to appellant.  Corporal Foster asked
appellant for his driver’s license.  Corporal Foster said that appellant
“fumbled” around while looking for his driver’s license but was finally able to
produce it.  Appellant’s hands were trembling when he gave Corporal Foster his
driver’s license.  Corporal Foster said that appellant was very nervous and
elusive.  Appellant told Corporal Foster that he and Williams had come from
Lamesa and were going to Dallas.  Although appellant acted as if he had stopped
to get gas, the Tahoe’s gas gauge showed that the tank was three-fourths full. 
Corporal Foster told appellant that he was going to get a warning for failing
to signal a turn.

            Williams
was also very nervous.  He was wearing baggie pants, and Trooper Pitts was
concerned that he might be carrying a weapon in his pants pockets.  Therefore,
Trooper Pitts conducted a pat-down search to check Williams for weapons. 
During the search, Trooper Pitts found a bag containing marihuana, a bag
containing a small amount of crack cocaine, and another bag containing a very
large cookie of crack cocaine.  Corporal Foster testified that this cookie was
the largest cookie of crack cocaine that he had ever seen.  Subsequent testing
of the cookie at the Department of Public Safety Crime Laboratory showed that
the cookie weighed 118.82 grams and contained cocaine.  The officers explained
during their testimony that such a large quantity of crack cocaine would have
been intended for distribution, not personal use.

Trooper
Pitts placed the marihuana and cocaine on the front of the patrol car.  He
handcuffed Williams and instructed Corporal Foster to handcuff appellant.  Trooper
Pitts told appellant that he was under arrest for possession of a controlled
substance.  Williams claimed that the drugs belonged to him and that appellant
did not know anything about them.  Appellant claimed that he did not know that
Williams had drugs in his pocket.  The officers believed that the cocaine
cookie had been inside the Tahoe and that Williams had put it into his pocket
in an attempt to take it inside the convenience store so that he could hide it. 
The officers said that it would be uncomfortable to a person to have such a
large cookie in his pocket and to be sitting on it while riding in a vehicle.

Trooper
Pitts drove the Tahoe to an auto shop, and the officers searched the vehicle.  During
the search, the officers found a set of digital scales in the driver’s side
door panel.  The officers testified that such scales are used to weigh cocaine
before it is sold.  Corporal Foster said that there was a white residue on the
scales and that it tested positive for cocaine.  Appellant told Corporal Foster
that he knew what the scales were used for.

The
officers found $4,401 in cash in appellant’s pockets.  The cash was bundled in
rolls of $1,000.  The officers testified that carrying cash in such bundles is a
manner in which individuals trafficking narcotics carry money.  Corporal Foster
placed the money inside a cabinet in the driver’s license office of the
Department of Public Safety building.  A police dog alerted on that cabinet.  The
dog’s alert indicated that the scent of narcotics was present on the money.

The
officers testified that pieces are broken off of cocaine cookies and then sold.
 The cookie that Trooper Pitts found had jagged edges and, therefore, had been
broken.  Department of Public Safety Sergeant Reuben Mankin estimated that the
part of the cookie that was gone would have had a value of $4,000 to $5,000.  In
Sergeant Mankin’s opinion, appellant was trafficking narcotics.

Analysis

            After
reviewing all the evidence, we hold that the evidence is legally sufficient to
support the jury’s verdict.  The State established a number of links between
appellant and the cocaine.  Appellant exited the highway in an attempt to elude
the officers.  The Tahoe was registered to appellant.  Appellant was nervous
and elusive when questioned by Corporal Foster.  The officers found digital
scales in the driver’s side door panel.  The digital scales contained a
substance that tested positive for cocaine.  Appellant was in possession of a
large amount of cash.  The cash was bundled in a manner that was consistent
with narcotics trafficking.  The seized cookie constituted a large quantity of
cocaine.  These facts linked appellant to the cocaine.    See Evans, 202
S.W.3d at 162 n.12.  Based on the evidence, a rational jury could have found
beyond a reasonable doubt that appellant intentionally and knowingly possessed
the cocaine with the intent to deliver.  Appellant’s first two issues are
overruled.

Motion
to Suppress

In
his third issue, appellant argues that the trial court erred by denying his
motion to suppress the digital scales and money as evidence because they were
obtained as a result of an illegal arrest.  Appellant contends that his arrest
was illegal because the officers lacked probable cause to arrest him for
possession of a controlled substance when he was arrested for that offense.  The
officers found the scales and money after appellant was arrested.  Therefore,
appellant contends that these items were seized as a result of his illegal
arrest.

We
review a trial court’s ruling on a motion to suppress for an abuse of
discretion.  Lujan v. State, 331 S.W.3d 768, 771 (Tex. Crim. App.
2011); Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).  In
reviewing a ruling on a motion to suppress, we apply a bifurcated standard of
review.  Hubert v. State, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); Valtierra
v. State, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).  First, we afford
almost total deference to the trial court’s determination of historical facts. 
Valtierra, 310 S.W.3d at 447.  The trial court is the sole trier of fact
and judge of the credibility of the witnesses and the weight to be given their
testimony.  Id.; Garza v. State, 213 S.W.3d 338, 346 (Tex. Crim.
App. 2007).  When, as here, no findings of fact were requested or filed, we
view the evidence in the light most favorable to the trial court’s ruling and
assume that the trial court made implicit findings of fact supported by the
record.  Valtierra, 310 S.W.3d at 447; Ford v. State, 158 S.W.3d
488, 493 (Tex. Crim. App. 2005).  Second, we review de novo the trial court’s
application of law to facts.  Hubert, 312 S.W.3d at 559; Valtierra,
310 S.W.3d at 447.  We will sustain the trial court’s ruling if it is
reasonably supported by the record and is correct on any theory of law
applicable to the case.  Valtierra, 310 S.W.3d at 447-48; State v.
Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). 

Probable
cause to arrest exists where the police have reasonably trustworthy
information, considered as a whole, sufficient to warrant a reasonable person
to believe that a particular person has committed or is committing an offense. 
McGee v. State, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003); Hughes v.
State, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000).  Probable cause requires
more than mere suspicion but far less evidence than that needed to support a
conviction or even that needed to support a finding by a preponderance of the
evidence.  Hughes, 24 S.W.3d at 838; Guzman v. State, 955 S.W.2d
85, 87 (Tex. Crim. App. 1997).  When more than one officer is involved in
investigating a crime, the sum of information known to cooperating officers at
the time of the arrest is to be considered in determining whether probable
cause to arrest existed.  Garrison v. State, 726 S.W.2d 134, 137 (Tex.
Crim. App. 1987); Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim.
App. 1984); Wilson v. State, 98 S.W.3d 265, 271 (Tex. App.— Houston [1st
Dist.] 2002, pet. ref’d).

Corporal
Foster and Trooper Pitts testified at the hearing on appellant’s motion to
suppress.  Their testimony at that hearing was essentially the same as their trial
testimony.  At the hearing, the officers described in detail the manner in which
appellant exited the highway and drove to the gas pumps at the truck stop. 
Both officers believed that appellant exited the highway in an attempt to evade
them.  Appellant acted suspiciously before he was arrested. Corporal Foster explained
that appellant was very elusive and extremely nervous. Appellant would not
maintain eye contact with Corporal Foster.  The officers testified that
Williams was very nervous.  Trooper Pitts found the very large cookie of crack
cocaine when he conducted the pat-down search of Williams.  Trooper Pitts
testified that the cookie was “probably at least three and a half or four
inches around” and “probably an inch, inch and a half deep.” After Trooper Pitts
found the cookie, he told Corporal Foster to handcuff appellant.  Corporal
Foster handcuffed appellant, and Trooper Pitts told appellant that he was under
arrest for possession of a controlled substance.

Viewing
the evidence in the light most favorable to the trial court’s ruling, including
the evidence relating to appellant’s driving conduct, his suspicious behavior
in the presence of the officers, and the large quantity of cocaine found, the
record supports the reasonable conclusion that the facts and circumstances
within the officers’ knowledge, and of which they had reasonably trustworthy
information, were sufficient to warrant a reasonable person to believe that
appellant was committing the offense of possession of cocaine.  Therefore, the officers
had probable cause to arrest appellant for possession of the cocaine.  The
trial court did not abuse its discretion by denying appellant’s motion to
suppress.  Appellant’s third issue is overruled.

This
Court’s Ruling

            The judgment of the
trial court is affirmed.

 

                                                            

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

September 29, 2011 

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.

 









[1]Jackson
v. Virginia, 443 U.S. 307 (1979).

 





[2]Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996).