**Opinion filed September 29, 2011**



## In The

# Eleventh Court of Appeals

_____

### No. 11-09-00301-CR

_____

## KEENE WESLEY HUNTER, Appellant
## V.
## STATE OF TEXAS, Appellee

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. 20843**

### MEMORANDUM OPINION

The jury convicted Keene Wesley Hunter of possession of four grams or more but less than 200 grams of cocaine with the intent to deliver. Pursuant to a punishment agreement between the State and appellant, the trial court assessed appellant's punishment at thirty-two years confinement. We affirm.

### Issues on Appeal

Appellant presents three issues for review. In his first two issues, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. Specifically, appellant contends that the evidence was legally and factually insufficient to establish that he knowingly and intentionally possessed cocaine with the intent to deliver. In his third issue, appellant argues

that the trial court erred by denying his motion to suppress evidence that was obtained as a result of his allegedly illegal arrest.

*Sufficiency of the Evidence Standard of Review*

We note at the outset of our analysis that the Texas Court of Criminal Appeals has now held in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is "no meaningful distinction between the *Jackson v. Virginia*[1] legal-sufficiency standard and the *Clewis*[2] factual-sufficiency standard"; that the *Jackson v. Virginia* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt"; and that "[a]ll other cases to the contrary, including *Clewis*, are overruled." *Brooks*, 323 S.W.3d at 895, 902, 912 (footnotes added). Accordingly, a challenge to the factual sufficiency of the evidence is no longer viable. We also note that appellant did not have the benefit of the opinion in *Brooks* when this case was briefed. We will review appellant's sufficiency challenges under the legal sufficiency standard set forth in *Jackson v. Virginia*. Under this standard, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307; *Brooks*, 323 S.W.3d at 899.

In a prosecution for possession of a controlled substance, the State must prove that the accused exercised care, custody, control, or management over the substance and that the accused knew the substance was contraband. TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 2010); *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988). The State does not have to prove that the accused had exclusive possession of the contraband; joint possession is sufficient to sustain a conviction. *Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). When the accused is not shown to have had exclusive possession of the place where the contraband was found, the evidence must link the accused to the contraband and establish that the accused's connection with the drug was more than fortuitous. *Evans*, 202 S.W.3d at 161-62; *Pollan v. State*, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981). Courts have recognized a number of factors that may link an accused to the drug. *Evans*, 202 S.W.3d at 162 n.12. The legal issue with respect to such "links" is "whether

---

[1]*Jackson v. Virginia*, 443 U.S. 307 (1979).

[2]*Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996).

there was evidence of circumstances, in addition to mere presence, that would adequately justify the conclusion that the defendant knowingly possessed the substance." *Evans*, 202 S.W.3d at 161-62 & n.9. No set formula exists to dictate a finding of links sufficient to support an inference of knowing possession of contraband. *Isbell v. State*, 246 S.W.3d 235, 238 (Tex. App.—Eastland 2007, no pet.); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). It is not the number of links that is dispositive but, rather, the logical force of all the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

*The Evidence at Trial*

On May 17, 2005, at about 1:30 p.m., Department of Public Safety Corporal David Foster and Trooper Tim Pitts were patrolling Interstate 20 in the westbound lanes, near mile marker 339, in Eastland County. Corporal Foster was driving the patrol car, and Trooper Pitts was a passenger in the car. The officers observed a 1999 Chevrolet Tahoe traveling in the passing lane of the eastbound lanes of Interstate 20. The officers believed that the tint on the Tahoe's windows was darker than the legal limit. Corporal Foster entered the median of the highway so that he could turn around and stop the Tahoe. When he entered the median, the driver of the Tahoe abruptly exited the highway by driving across the outside eastbound lane of the highway and using the Highway 6 exit ramp. Corporal Foster testified that the driver of the Tahoe did not slow down as he exited the highway.

The officers believed that the driver of the Tahoe had seen them turning around in the median and was attempting to elude them. Corporal Foster explained that drivers usually do not attempt to exit the highway directly from the inside lane to the exit ramp. Corporal Foster said that the driver of the Tahoe exited the highway in a reckless manner in an effort to get away from the officers. After exiting, the driver stopped at the stop sign at the intersection of the service road and Highway 6, turned right onto Highway 6 without activating his turn signal, and then turned left into the Red Star truck stop parking lot without activating a turn signal. The driver drove through the parking lot at a dangerously high rate of speed and then abruptly stopped at the gas pumps. Corporal Foster turned on the flashing lights on the patrol car and stopped behind the Tahoe. The video camera in the patrol car activated when Corporal Foster turned on the lights.

Two men exited the vehicle. The driver walked toward the Tahoe's gas tank, and the passenger walked toward the entrance of the convenience store of the truck stop. Trooper Pitts stopped the passenger from entering the store. Corporal Foster approached the driver. The driver

3

glanced up and then looked down. He would not maintain eye contact with Corporal Foster. The driver was elusive and did not pay attention to what Corporal Foster was asking him. The driver opened the lid to the Tahoe's gas tank. The officers believed that the passenger wanted to go inside the store to hide or to get rid of something.

The officers determined that appellant was the driver of the Tahoe and that Willy Charles Williams was the passenger in the Tahoe. Appellant and Williams were cousins. The Tahoe was registered to appellant. Corporal Foster asked appellant for his driver's license. Corporal Foster said that appellant "fumbled" around while looking for his driver's license but was finally able to produce it. Appellant's hands were trembling when he gave Corporal Foster his driver's license. Corporal Foster said that appellant was very nervous and elusive. Appellant told Corporal Foster that he and Williams had come from Lamesa and were going to Dallas. Although appellant acted as if he had stopped to get gas, the Tahoe's gas gauge showed that the tank was three-fourths full. Corporal Foster told appellant that he was going to get a warning for failing to signal a turn.

Williams was also very nervous. He was wearing baggie pants, and Trooper Pitts was concerned that he might be carrying a weapon in his pants pockets. Therefore, Trooper Pitts conducted a pat-down search to check Williams for weapons. During the search, Trooper Pitts found a bag containing marihuana, a bag containing a small amount of crack cocaine, and another bag containing a very large cookie of crack cocaine. Corporal Foster testified that this cookie was the largest cookie of crack cocaine that he had ever seen. Subsequent testing of the cookie at the Department of Public Safety Crime Laboratory showed that the cookie weighed 118.82 grams and contained cocaine. The officers explained during their testimony that such a large quantity of crack cocaine would have been intended for distribution, not personal use.

Trooper Pitts placed the marihuana and cocaine on the front of the patrol car. He handcuffed Williams and instructed Corporal Foster to handcuff appellant. Trooper Pitts told appellant that he was under arrest for possession of a controlled substance. Williams claimed that the drugs belonged to him and that appellant did not know anything about them. Appellant claimed that he did not know that Williams had drugs in his pocket. The officers believed that the cocaine cookie had been inside the Tahoe and that Williams had put it into his pocket in an attempt to take it inside the convenience store so that he could hide it. The officers said that it would be uncomfortable to a person to have such a large cookie in his pocket and to be sitting on it while riding in a vehicle.

4

Trooper Pitts drove the Tahoe to an auto shop, and the officers searched the vehicle. During the search, the officers found a set of digital scales in the driver's side door panel. The officers testified that such scales are used to weigh cocaine before it is sold. Corporal Foster said that there was a white residue on the scales and that it tested positive for cocaine. Appellant told Corporal Foster that he knew what the scales were used for.

The officers found $4,401 in cash in appellant's pockets. The cash was bundled in rolls of $1,000. The officers testified that carrying cash in such bundles is a manner in which individuals trafficking narcotics carry money. Corporal Foster placed the money inside a cabinet in the driver's license office of the Department of Public Safety building. A police dog alerted on that cabinet. The dog's alert indicated that the scent of narcotics was present on the money.

The officers testified that pieces are broken off of cocaine cookies and then sold. The cookie that Trooper Pitts found had jagged edges and, therefore, had been broken. Department of Public Safety Sergeant Reuben Mankin estimated that the part of the cookie that was gone would have had a value of $4,000 to $5,000. In Sergeant Mankin's opinion, appellant was trafficking narcotics.

*Analysis*

After reviewing all the evidence, we hold that the evidence is legally sufficient to support the jury's verdict. The State established a number of links between appellant and the cocaine. Appellant exited the highway in an attempt to elude the officers. The Tahoe was registered to appellant. Appellant was nervous and elusive when questioned by Corporal Foster. The officers found digital scales in the driver's side door panel. The digital scales contained a substance that tested positive for cocaine. Appellant was in possession of a large amount of cash. The cash was bundled in a manner that was consistent with narcotics trafficking. The seized cookie constituted a large quantity of cocaine. These facts linked appellant to the cocaine. *See Evans*, 202 S.W.3d at 162 n.12. Based on the evidence, a rational jury could have found beyond a reasonable doubt that appellant intentionally and knowingly possessed the cocaine with the intent to deliver. Appellant's first two issues are overruled.

*Motion to Suppress*

In his third issue, appellant argues that the trial court erred by denying his motion to suppress the digital scales and money as evidence because they were obtained as a result of an illegal arrest. Appellant contends that his arrest was illegal because the officers lacked probable cause to arrest him for possession of a controlled substance when he was arrested for that

5

offense. The officers found the scales and money after appellant was arrested. Therefore, appellant contends that these items were seized as a result of his illegal arrest.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011); *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total deference to the trial court's determination of historical facts. *Valtierra*, 310 S.W.3d at 447. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*; *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). When, as here, no findings of fact were requested or filed, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Valtierra*, 310 S.W.3d at 447; *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). Second, we review de novo the trial court's application of law to facts. *Hubert*, 312 S.W.3d at 559; *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447-48; *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

Probable cause to arrest exists where the police have reasonably trustworthy information, considered as a whole, sufficient to warrant a reasonable person to believe that a particular person has committed or is committing an offense. *McGee v. State*, 105 S.W.3d 609, 614 (Tex. Crim. App. 2003); *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). Probable cause requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence. *Hughes*, 24 S.W.3d at 838; *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). When more than one officer is involved in investigating a crime, the sum of information known to cooperating officers at the time of the arrest is to be considered in determining whether probable cause to arrest existed. *Garrison v. State*, 726 S.W.2d 134, 137 (Tex. Crim. App. 1987); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1984); *Wilson v. State*, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

Corporal Foster and Trooper Pitts testified at the hearing on appellant's motion to suppress. Their testimony at that hearing was essentially the same as their trial testimony. At the hearing, the officers described in detail the manner in which appellant exited the highway and

drove to the gas pumps at the truck stop. Both officers believed that appellant exited the highway in an attempt to evade them. Appellant acted suspiciously before he was arrested. Corporal Foster explained that appellant was very elusive and extremely nervous. Appellant would not maintain eye contact with Corporal Foster. The officers testified that Williams was very nervous. Trooper Pitts found the very large cookie of crack cocaine when he conducted the pat-down search of Williams. Trooper Pitts testified that the cookie was "probably at least three and a half or four inches around" and "probably an inch, inch and a half deep." After Trooper Pitts found the cookie, he told Corporal Foster to handcuff appellant. Corporal Foster handcuffed appellant, and Trooper Pitts told appellant that he was under arrest for possession of a controlled substance.

Viewing the evidence in the light most favorable to the trial court's ruling, including the evidence relating to appellant's driving conduct, his suspicious behavior in the presence of the officers, and the large quantity of cocaine found, the record supports the reasonable conclusion that the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant a reasonable person to believe that appellant was committing the offense of possession of cocaine. Therefore, the officers had probable cause to arrest appellant for possession of the cocaine. The trial court did not abuse its discretion by denying appellant's motion to suppress. Appellant's third issue is overruled.

<em>This Court's Ruling</em>

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


September 29, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.