Opinion issued February 5, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00503-CR




DAVID GREGORY SMITH, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 903134




MEMORANDUM OPINION

          A jury found appellant, David Gregory Smith, guilty of possession with intent
to deliver methamphetamine weighing at least 400 grams and assessed punishment
at confinement for 37 years. The jury also imposed a $50,000 fine. On appeal,
appellant contends the trial court erred in (1) denying his motion to suppress evidence
seized from his house, (2) admitting evidence that he was associated with the Bandido
motorcycle club, and (3) admitting evidence indicating that he held racist beliefs.
          We affirm.
Facts & Procedural History
          On October 4, 2000, Houston police officers searched appellant’s house
pursuant to a search warrant. The search warrant was supported by an October 4,
2000 affidavit of Houston Police Officer R. Fernandez. In his affidavit, Officer
Fernandez stated that he and his partner, Houston Police Officer C. Full, conducted
an undercover narcotics investigation that focused on outlaw motorcycle gangs from
January 2000 to the date of the affidavit. Officer Fernandez attested that, during the
investigation, a drug dealer from whom the officers purchased methamphetamine
indicated that appellant was the supplier of the methamphetamine purchased by the
officers. In his affidavit, Officer Fernandez further stated as follows:
On October 4, 2000, I spoke with [Houston Police Officer P. Foose], a
peace officer employed by the Harris County Sheriff’s Department as a
narcotics dog handler. He stated that his canine partner is Rocky. He
is a certified narcotics dog handler and Rocky is a certified narcotics
detection dog and the Texas K-9 Police Association certifies them both. 
Rocky is trained to detect the odor of marijuana, cocaine,
methamphetamine, and heroin. On October 4, 2000, he and Rocky went
to 519 Shawnee, Houston, Harris County, Texas. He and Rocky walked
up to the residence and walked next to the garage of the residence. He
stated that he and Rocky walked to the residence in a manner that would
be most commonly used by any member of the general public. Rocky
was allowed to examine the garage door where air from the inside of the
garage could escape to the outside. Rocky gave a positive alert on the
lower corner of the garage door. The positive alert indicates the
presence of the odor of marijuana or cocaine or methamphetamine or
heroin within the garage of the residence at 519 Shawnee.

          During the search, officers seized approximately 660 grams of
methamphetamine from appellant’s bedroom. Officers also seized money, clothing,
and pictures belonging to appellant. Many of the items seized from appellant’s house
contained the insignia or other markings relating to the “Bandido” motorcycle club. 
Pictures of appellant associating with Bandido club members and wearing Bandido
paraphernalia were seized as well. The police also seized a small jewelry box in the
shape of a coffin and ornamented with a picture of Adolph Hitler, which contained
money and appellant’s drivers license. As the officers searched appellant’s house,
they made a video recording, documenting the items seized. 
          During the guilt/innocence stage of appellant’s trial, the trial court admitted
into evidence a redacted version of the video made by the officers. The redacted
version of the video excluded footage of items that merely contained “general
Bandido information.” The trial court also admitted into evidence the jewelry box
ornamented with a picture of Hitler.
          During the punishment phase of appellant’s trial, the trial court allowed the
entire video into evidence. Moreover, the court admitted photographs of appellant
dressed in Bandido clothing, appellant associating with Bandido club members, and
a swastika tattoo on appellant’s arm. Agent T. D’Pulos of the Federal Bureau of
Investigation also testified concerning the racist beliefs espoused by the Bandido
motorcycle club.
Motion to Suppress Evidence
          In his first nine points of error, appellant contends that the search warrant
obtained to search his house was not supported by sufficient probable cause. 
Specifically, appellant asserts that the affidavit supporting the search warrant
contained information garnered from an illegal search (viz., the drug-dog sniff) under
the United States and Texas Constitutions.


 Appellant further asserts that the
affidavit supporting the search warrant contained “material misrepresentations, and/or
falsehoods and/or omissions.” Appellant avers that the affidavit—after all illegally
obtained and fallacious information has been redacted therefrom—does not show
sufficient probable cause for a search. Thus, appellant concludes that the trial court
erred in denying his motion to suppress evidence obtained from the search of his
house because the evidence was the product of an illegal search.
          We review a trial court’s ruling on a motion to suppress evidence using a
bifurcated standard of review. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997); Wilson v. State, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d). “Thus, we give almost total deference to the trial court’s determination
of historical facts that depend on credibility choices, but review its application of the
law of probable cause de novo.” Wilson, 98 S.W.3d at 271 (quoting Burke v. State,
27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref’d)). 
A.      Basis of Search Warrant
          A search warrant must be supported by an affidavit setting forth substantial
facts establishing probable cause for its issuance. Wilson, 98 S.W.3d at 270. 
Whether the facts alleged in a probable cause affidavit sufficiently support a search
warrant is determined by examining the totality of the circumstances. Ramos v. State,
31 S.W.3d 762, 764-65 (Tex. App.—Houston [1st Dist.] 2000, no pet.). The
allegations are sufficient if they justify a conclusion that the object of the search is
probably on the premises. Id. at 765. A trained drug dog’s positive alert for drugs
provides sufficient probable cause for a search. Wilson, 98 S.W.3d at 272.
          A search warrant may not be lawfully procured by the use of illegally obtained
information. Brown v. State, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980). 
Similarly, a search warrant may not be knowingly predicated on false information. 
See Franks v. Delaware, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978). The
inclusion of tainted allegations in an affidavit, however, will not automatically render
invalid a search warrant based on the affidavit. Castillo v. State, 818 S.W.2d 803,
805 (Tex. Crim. App. 1991). Rather, the relevant inquiry becomes whether, putting 
 
aside all tainted allegations, the lawfully acquired and veracious information stated
in the affidavit clearly established probable cause. See id. 
B.      Evidence Obtained from Drug Dog
          Appellant argues that the drug-dog sniff outside appellant’s garage door was
an illegal search; therefore, the information obtained from the sniff (i.e., the drug
dog’s positive alert) was acquired illegally and could not be the basis of a valid search
warrant. Appellant contends that the drug-dog sniff was an illegal search because (1)
Officer Foose unlawfully entered appellant’s property; (2) Officer Foose’s use of a
drug dog was unlawful; and (3) the drug dog used by Officer Foose was not properly
trained. 
          1.       Officer Foose’s Entry on Appellant’s Property
Appellant contends that Officer Foose’s entry onto appellant’s property was a
trespass. Specifically, appellant asserts that “while the entry onto the property would
not be a criminal trespass, arguably it is a trespass in the sense that it is an entry for
a purpose that is not intended to create a communication with the dwellers.” Thus, 
appellant concludes that, because Officer Foose unlawfully entered upon appellant’s
property to conduct the drug-dog sniff, the information derived from the sniff was
illegally obtained.
 
 
          In Delosreyes v. State, this Court held that a defendant’s privacy interests,
under the federal and state constitutions, were not invaded where an officer “merely
walked from the street in front of the house, a short way up the driveway to the garage
door, and smelled the marijuana emanating from the garage.” 853 S.W.2d 684, 690
(Tex. App.—Houston [1st Dist.] 1993, pet. ref’d). We found the officer’s conduct
permissible because, the defendant’s driveway was situated so that anyone
approaching the house would walk up the driveway and pass near the garage in order
to get to the front door of the house. Id.
          In the instant case, Officer Foose approached appellant’s garage by walking up
the driveway. The driveway Officer Foose traversed led both to the front of the
garage and to the entrance of the house. Like in Delosereyes, anyone approaching
appellant’s house would walk up the driveway and pass near the garage in order to
reach the entrance of the house. We conclude that appellant’s privacy interests under
the United States and Texas Constitutions were not invaded when Officer Foose
walked up appellant’s driveway to allow a drug dog to sniff appellant’s garage door.
          2.       Officer Foose’s Use of Drug Dog
          Relying on Kyllo v. United States, appellant contends that the drug dog was an
enhancement of Officer Foose’s senses that was not in general public use; therefore,
the drug-dog sniff was a Fourth Amendment “search” that required a search warrant. 
See 533 U.S. 27, 33, 121 S. Ct. 2038, 2042-43 (2001). Because Officer Foose did not
obtain a search warrant prior to the drug-dog sniff, appellant concludes that the
information derived from the sniff was illegally obtained. 
          We have previously addressed appellant’s contention and have found it to be
untenable. See Wilson v. State, 98 S.W.3d 265, 272 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). Unlike the surveillance device used in Kyllo, a drug-dog sniff does
not explore the details of a house. See id. Indeed, a drug-dog sniff can do no more
than reveal the presence or absence of contraband (viz., narcotics). Id. A
governmental investigative technique that merely reveals the presence of
narcotics—while revealing nothing about noncontraband items, activity or
information that would otherwise remain hidden from public view—compromises no
legitimate privacy interest and is thus not a “search” for Fourth Amendment purposes. 
Id. at 272-273; see also City of Indianapolis v. Edmond, 531 U.S. 32, 40, 121 S. Ct.
447, 453 (2000); Jacobsen, 466 U.S. 109, 122-24, 104 S. Ct. 1652, 1661-62 (1984);
United States v. Place, 462 U.S. 696, 706-07, 103 S. Ct. 2637, 2644-45 (1983).
          We conclude that the drug-dog sniff did not constitute a search under the
United States and Texas Constitutions. 
          3.       Credibility of Dog’s Training
          Appellant contends that “while the reported cases allowing sniffs provide no
detail regarding the training of the dog, they do require that the dog be ‘well-trained.’” Appellant argues that the drug dog used in the sniff search was not “well-trained.” Specifically, appellant complains that the dog’s training records were
incomplete and that the dog was not trained as often as Harris County Sheriff’s
Department protocol called for. Appellant further complains that the drugs used to
train the dog were always wrapped in plastic and might have been pseudo drugs
instead of real drugs.


 Appellant also complains that the drug dog was trained to find
drugs at every training session, which could have led to false alerts in actual practice. 
Appellant concludes that, because Officer Foose used a drug dog that was not well
trained, the sniff of appellant’s garage was illegal; thus, the information derived from
the sniff was illegally obtained.
          In a suppression hearing, the trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. State v. Guo,
64 S.W.3d 662, 666 (Tex. App.—Houston [1st Dist.] 2001, no pet.). We afford
almost total deference to a trial judge’s determination of historical facts that the
record supports, especially when the findings are based on an evaluation of credibility
and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When
the trial court does not make explicit findings of historical fact, we review the
evidence in the light most favorable to the trial court’s ruling. Carmouche v. State,
10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000); Spight v. State, 76 S.W.3d 761, 765
(Tex. App.—Houston [1st Dist.] 2002, no pet.). Further, we assume the trial court
made implied findings of fact that support its ruling as long as those findings are
supported by the record. Carmouche, 10 S.W.3d at 328. 
          In the instant case, the State presented evidence that the drug dog and handler
were certified by the Texas K-9 Police Association and that the drug dog continued
to be trained after certification. Despite the evidence appellant presented challenging
the reliability of the drug dog’s training, the trial court implicitly found that both the
drug dog and Officer Foose were well-trained. We must defer to the trial court’s
factual determination that the drug-dog sniff was executed by a well-trained dog and
handler. See $217,590.00 In United States Currency v. State, 54 S.W.3d 918, 922
(Tex. App.—Corpus Christi 2001, no pet.). 
C.      Probable Cause for Search Warrant
          We conclude that the drug-dog sniff of appellant’s garage door was not an
illegal search; therefore, the evidence obtained from the sniff (i.e., the drug-dog’s
positive alert) was properly considered by the magistrate who issued the search
warrant. Because the drug-dog’s positive alert for drugs was alone sufficient to
establish probable cause for the search, see Wilson, 98 S.W.3d at 271, we need not
address the other allegations stated in the affidavit, rendering moot appellant’s
assertion that those allegations contained “material misrepresentations, and/or
falsehoods and/or omissions.” See Castillo, 818 S.W.2d at 805.
           We hold that the trial court did not err in denying appellant’s motion to
suppress the evidence obtained from his house on the grounds that the evidence was
the product of an illegal search. 
          We overrule appellant’s first nine points of error.
Admission of Evidence
          In his tenth through thirteenth points of error, appellant contends that the trial
court erred in admitting evidence of appellant’s affiliation with the Bandido
motorcycle club and appellant’s racist beliefs. 
          We review a trial court’s decision to admit or exclude evidence for an abuse
of discretion. Mozon v. State, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999). In
determining whether the trial court abused its discretion, we consider whether the
court acted without reference to guiding rules and principles—that is, whether the
court acted arbitrarily or unreasonably. Lyles v. State, 850 S.W.2d 497, 502 (Tex.
Crim. App. 1993). We must uphold the trial court’s ruling so long as it is “within the
zone of reasonable disagreement.” Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim.
App. 2002).
A.      Evidence of Bandido Affiliation
          In his tenth point of error, appellant contends that the trial court erred in
admitting, during the guilt/innocence stage of trial, the redacted video containing
footage of appellant’s house on the day of appellant’s arrest. The redacted video
contained incidental footage which showed contents of appellant’s house bearing the
name or insignia of the Bandido motorcycle club. In his eleventh point of error,
appellant contends that the trial court erred during the punishment stage of the trial 
by admitting into evidence the full video as well as testimony by Agent D’Pulos
which tied appellant to the Bandidos while also tying the Bandidos to illegal drug
activity.
          Appellant asserts that the trial court erred in admitting the complained of
evidence of appellant’s affiliation with the Bandido motorcycle club because (1) the
evidence was inadmissible “guilt by association” evidence; (2) the admission of the 
evidence impinged on appellant’s First Amendment rights; and (3) the State failed to 
establish a nexus between the crime for which appellant was being tried and
appellant’s affiliation with the Bandidos.
          1.       Appellant’s “Guilt by Association” and First Amendment Objections

          To complain of error on appeal, a defendant must make a specific, timely
objection during trial. Havard v. State, 800 S.W.2d 195, 211 (Tex. Crim. App. 1989).
To preserve error, the specific objection must be pressed to the point of obtaining an
adverse ruling, whether that is a ruling on the objection, a request for an instruction,
or a request for a mistrial. Fuller v. State, 827 S.W.2d 919, 926 (Tex. Crim. App.
1992). A defendant may not, on appeal, argue a reason for error that was not urged 
at trial. See id. Nor may a defendant use a trial objection stating one legal basis to
support a different legal theory on appeal. Martinez v. State, 867 S.W.2d 30, 35 (Tex.
Crim. App. 1993).  
          Issues raised in a motion in limine are not preserved for appeal. Wilkerson v.
State, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994). For error to be preserved with
regard to an issue raised in a motion in limine, it is necessary that further objection
be made at the time when the issue is raised at trial. Gonzales v. State, 685 S.W.2d
47, 50 (Tex. Crim. App. 1985). 
                    i.        Video of appellant’s house
          Although appellant raised his “guilt by association” and First Amendment
objections to the admission of the video in his “Motion For State To Prove, Outside
The Presence Of The Jury, The Bandidos’ Violent And Illegal Activites,” this motion
was merely a motion in limine requesting that the trial court conduct a hearing before
admitting evidence found in the video. When the redacted video was introduced into
evidence during the guilt/innocence stage of appellant’s trial, appellant merely
objected to the evidence as being hearsay. Similarly, when the full video was
introduced into evidence during the punishment phase of appellant’s trial, appellant
only objected on the grounds that the video did not “truly and accurately depict the 
 
 
 
scene” and that the prejudicial nature of the video outweighed its probative value
under Texas Rule of Evidence 403. These objections were not sufficient to preserve
error on “guilt by association” or First Amendment grounds. See Martinez, 867
S.W.2d at 35.
                    ii.       Agent D’Pulos’s testimony
           During the punishment phase of trial, appellant made a general objection prior
to the testimony of Officer D’Pulos, arguing that the anticipated testimony was
inadmissible on “guilt by association” and First Amendment grounds. However,
appellant did not specify the portion of D’Pulos’s anticipated testimony to which he
was objecting. Further, appellant failed to object on these grounds during Agent
D’Pulos’s trial testimony.
          We hold that appellant failed to preserve error as to his “guilt by association”
and First Amendment objections.
          2.       Appellant’s Inadequate Nexus Objection
          To be considered by an appellate court, a brief must contain a clear and concise
argument for the contentions made, with appropriate citations to authorities and the
record. Tex. R. App. P. 38.1(h). Conclusory arguments that cite no authority present
nothing for our review. King v. State, 17 S.W.3d 7, 23 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref’d). 
 
          In the instant case, appellant has presented this Court with no argument or
analysis to support his assertion that the State failed to show a sufficient nexus
between appellant’s crime and evidence of appellant’s affiliation with the Bandidos. 
Appellant neither addressed any of the governing legal principles nor applied such
principles to the facts of this case. Appellant has failed to adequately brief his nexus
argument and has thus waived it. See Mosley v. State, 983 S.W.2d 249, 256 (Tex.
Crim. App. 1998) (rejecting argument as inadequately briefed). 
          We hold that appellant has waived error as to his inadequate nexus objection.
          We overrule appellant’s tenth and eleventh points of error.
B.      The Jewelry Box
          In his twelfth point of error, appellant argues that the trial court erred in
admitting evidence of (1) the jewelry box ornamented with a picture of Hitler, (2) a
photograph of the jewelry box, and (3) video footage of the jewelry box during the
guilt/innocence stage of trial on the basis that the evidence was more prejudicial than
probative under Rule of Evidence 403.
          First, when the jewelry box was introduced by the State at trial, appellant
merely objected to its admission on the basis of “no foundation.” As we have stated,
a defendant may not use a trial objection stating one legal basis to support a different 
 
 
legal theory on appeal. Martinez, 867 S.W.2d at 35. Thus, we hold that appellant has
waived his right to make a Rule 403 argument on appeal in regards to the jewelry
box.
          Second, when the State introduced the photograph of the jewelry box at trial,
appellant’s only objection was that the photograph violated the trial court’s order
regarding appellant’s motion in limine. A ruling on a motion in limine is not an
evidentiary ruling, but rather a ruling regarding administration of the trial. See
Harnett v. State, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref’d). 
Therefore, even if the State had violated the order on the motion in limine, appellant
was still required to make a specific and timely Rule 403 objection to the photograph
in order to preserve error for appeal. See id. He failed to make such an objection. 
Thus, we hold appellant has failed to preserve error as to his Rule 403 argument
regarding the photograph of the jewelry box. 
          Third, the State advised the court at trial of its intent to introduce video footage
of appellant’s house before it called the witness during whose testimony the video
was introduced. Before proceeding with the trial, the court held a hearing outside the
presence of the jury, viewed the video and entertained appellant’s objections to the
video. During this hearing, appellant’s trial counsel made the following statements: 
Yes, Your Honor. The Court has had an opportunity to view the
videotape now. Obviously, there’s tons of Nazi paraphernalia there
floating around the house, as well as numerous shots of Bandido
paraphernalia, for lack of a better term. Additionally, I believe that the
videotape does not paint a fair and accurate portrayal of David Smith’s
house at 519 Shawnee at the time the videotape was shot. Drugs are
located out in the open in unsecreted places. Additionally, guns are just
shown like they are just lying around.

Trial counsel also commented as follows:
 
This video is peppered throughout with prejudicial depictions of
Bandidos, of Nazis. So far, that’s 404(b)’d out. It’s in limined out. It
hasn’t been allowed to come in yet.

          Appellant’s trial counsel made no other complaints during the hearing
regarding footage in the video that depicted racist paraphernalia. After the hearing,
when the videotape was introduced into evidence, the following exchange took place:
[State’s counsel]:Your Honor, at this time, the State would offer into
evidence [the redacted video].
 
THE COURT:All right.
 
[Trial counsel]:Renew my objection. Your Honor.
 
THE COURT:All right. Your objections are overruled, other than
what has been previously discussed on the record.

          When objecting to a body of evidence that contains both admissible and
inadmissible evidence—such as a videotape—a party must specifically identify those
parts to which it is objecting. See Barnes v. State, 876 S.W.2d 316, 329 (Tex. Crim.
App. 1994). As the Court of Criminal Appeals has opined:
The trial court need never sort through challenged evidence in order to
segregate the admissible from the excludable, nor is the trial court
required to admit only the former part or exclude only the latter part. If
evidence is offered and challenged which contains some of each, the
trial court may safely admit it all or exclude it all, and the losing party,
no matter who he is, will be made to suffer on appeal the consequences
of his insufficiently specific offer or objection.

Jones v. State, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992). 
          During the hearing in which he made numerous objections to the video,
appellant failed to make a specific Rule 403 objection to the video footage depicting
the jewelry box. Nor did appellant make a specific Rule 403 objection when the
video was introduced into evidence. Although appellant generally complained about
those portions of the video depicting Nazi paraphernalia, it was not required of the
trial court, in the face of such a general complaint, to cull through the video and
exclude whatever particular footage might have met that description. See Barnes, 876
S.W.2d at 329. Thus we hold that appellant has failed to preserve error as to his Rule
403 argument regarding the video footage of the jewelry box.
          We overrule appellant’s twelfth point of error. 
C.      Evidence of Racist Beliefs
          In his thirteenth point of error, appellant asserts that the trial court erred in
admitting evidence concerning appellant’s white supremacist beliefs during the
punishment phase of his trial. Specifically, appellant complains of the admission of
evidence indicating that (1) Bandidos are white supremacists, (2) appellant had a
swastika tattoo on his arm, and (3) a swastika is a sign of white supremacists. On 
appeal, appellant asserts that this evidence was inadmissible because (1) it violated 
 
his right to free association and free speech, (2) it was not relevant, and (3) its
probative value was outweighed by its prejudicial effect. 
          Prior to Officer D’Pulos’s testimony—during which the complained of
evidence was admitted—appellant requested a voir dire of the witness outside of the
presence of the jury. The request was granted and during voir dire, appellant 
objected to Officer D’Pulos’s testimony showing the Bandidos and appellant to be
racist on the basis of appellant’s right to free association and free speech, relevancy,
and 404(b). However, the trial court allowed the Officer to testify, advising appellant
to object when such evidence was presented before the jury. Appellant failed to re-assert these objections during Agent D’Pulos’s testimony and thus waived his
argument on appeal. 
          We overrule appellant’s thirteenth point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 

                                                   Laura Carter Higley
                                                   Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Higley.
Do not publish. Tex. R. App. P. 47.2(b).