Ralph CASTILLO and Christopher Castillo, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 1411–89, 1412–89.

Court of Criminal Appeals of Texas, En Banc.

Nov. 6, 1991.

Renie McClellan, Cedar Hill, for appellant Ralph Castillo.

John D. Nation, Dallas, for appellant Christopher Castillo.

Patrick C. Batchelor, Dist. Atty., Corsicana, Jim Vollers, Austin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellants, Ralph Castillo and Christopher Castillo, were tried jointly and found guilty of the offense of engaging in organized criminal activity. Tex.Penal Code § 71.02(a)(5). The jury assessed punishment for each at imprisonment for 65 years and a fine of $100,000. The Tenth Court of Appeals subsequently affirmed both convictions in an unpublished opinion. *Castillo v. State*, Nos. 10–88–044–CR and 10–88–034–CR (Tex.App.—Waco, Aug. 10, 1991). We granted Appellants' petitions for discretionary review, pursuant to Tex.R.App. Proc. 200(c)(4), in order to determine whether certain wiretap evidence should have been suppressed under Tex.Code Crim. Proc. art. 18.20, § 2 (the wiretap statute exclusionary rule). We will affirm the judgment of the court of appeals.

On March 23, 1987, the Ellis County district attorney and the Navarro County criminal district attorney submitted sworn applications to Mace Thurman, 147th district court judge of Travis County, for orders authorizing wiretaps on two Ellis County telephones. Later that day, Judge Thurman issued the intercept orders as requested. On March 31, 1987, the Navarro County criminal district attorney submitted a third sworn application to Judge Thurman requesting a third wiretap, this time on a residential telephone, subscribed to by Josephine Castillo, located at Route 1, Box 42, Blooming Grove, Navarro County. Again, Judge Thurman issued the intercept order as requested. The application for the third wiretap contained information derived from the first two wiretaps.

Officers of the Texas Department of Public Safety later tape-recorded several conversations acquired through the third wiretap. Transcripts of these conversations were admitted in evidence at Appellants' trial over their objection.

Appellants argue that the contents of the tape-recorded conversations should have been suppressed under Article 18.20, § 2, because the third (Navarro County) wiretap was not lawfully authorized. More specifically, Appellants contend that the Ellis County wiretaps were unlawful because Judge Thurman had no power to authorize them, that all information derived from the Ellis County wiretaps was therefore tainted, that the Navarro County wiretap was also unlawful because the authorization for it was based in part on the tainted information derived from the Ellis County wiretaps, and that all information derived from the Navarro County wiretap was therefore also tainted.[1] Appellants argue further that the Navarro County wiretap was unlawfully authorized because the application for it failed to explain why "normal" investigative procedures were inadequate.

The State argues in response (1) that the Ellis County and Navarro County wiretaps were all lawfully authorized; (2) that, in any event, Appellants suffered no harm from the inclusion of the Ellis County wiretap information in the application for the

---

**1.** Judge Thurman was the judge lawfully empowered to order electronic intercepts in the Third Administrative Judicial District, which included Navarro County. See Tex.Gov't Code § 74.042(d).

Navarro County wiretap because that application clearly established probable cause independent of the Ellis County information; and (3) that the application for the Navarro County wiretap did in fact show that normal investigative procedures were inadequate.[2]

The court of appeals held that the Ellis County wiretaps were, in all respects, lawfully authorized. Given that holding, the court of appeals had no need to consider the State's argument that the Navarro County wiretap application clearly established probable cause independent of the Ellis County wiretap information.

## I

■ Last term, in *Castillo v. State*, 810 S.W.2d 180 (Tex.Cr.App.1990), the companion case to the one at bar, we considered the legality of the intercept orders for the three wiretaps in question. We determined in that first case that Judge Thurman had no authority to issue the intercept orders for the Ellis County wiretaps and that all information derived from those wiretaps was therefore tainted. We determined, too, that the information derived from the Navarro County wiretap was similarly tainted—and thus excludable under Article 18.20, § 2—because that wiretap was authorized in part based on the tainted Ellis County information. We had no occasion in *Castillo*, however, to consider the State's present argument that the Navarro County wiretap application established probable cause independent of the tainted Ellis County wiretap information. See *Castillo v. State*, 810 S.W.2d at 182 n. 2.

In *Brown v. State*, 605 S.W.2d 572 (Tex. Cr.App.1980), we recognized that the inclusion of tainted allegations in an affidavit does not necessarily render a resulting search warrant invalid. Rather, the relevant inquiry on a motion to suppress evidence seized pursuant to such a warrant is whether, putting aside all tainted allegations, the independently acquired and lawful information stated in the affidavit nevertheless clearly established probable cause. The rationale for the rule is obvious: if the tainted information was *clearly* unnecessary to establish probable cause for the search warrant, then the defendant could not have been harmed by the inclusion of the tainted information in the affidavit. This rule is plainly applicable to Article 18.20 wiretap orders, which are simply a particular type of search warrant.

■ Given the rule recognized in *Brown*, we must determine next whether the application for the Navarro County wiretap clearly established the necessary probable cause independent of the tainted Ellis County wiretap information. To make such a determination, we must consider only the facts, and not the mere conclusions, sworn to by the applicant.[3]

Probable cause[4] to support a wiretap order is delineated by Tex.Code Crim.Proc. art. 18.20, §§ 4 and 9, which provide in relevant part:

§ 4 A judge may issue an order authorizing interception of wire, oral, or electronic communications only if the prosecutor applying for the order shows probable cause to believe that the interception will provide evidence of the commission of a felony (other than felony possession of marihuana) under the Texas Controlled Substances Act ... or of a

---

**2.** The State argues also that Appellants have no standing to challenge the Ellis County wiretaps. See Tex.Code of Crim.Proc. art. 18.20, §§ 1(11) and 14(b). The question of standing under the wiretap statute is a difficult one that we have not yet addressed. See G. Dix, *The 1981 Texas Electronic Surveillance Statute*, 7 T.Mar.L.Rev. 59, 71–74 (1981). For the purposes of this opinion, we will assume arguendo that Appellants have standing.

**3.** "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of oth-

ers." *Illinois v. Gates*, 462 U.S. 213, 239, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983).

**4.** The phrase "probable cause" is not defined in the Texas Code of Criminal Procedure. Therefore, we give the phrase its usual legal meaning: probable cause exists to believe "X" when the facts and circumstances within an officer's personal knowledge and of which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that, more likely than not, "X" is true. See *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

felony under the Texas Dangerous Drug Act[.]

§ 9(a) On receipt of an application [for an intercept order], the judge [authorized to issue such orders] may enter an ex parte order, as requested or as modified, authorizing interception of wire, oral, or electronic communications if the judge determines from the evidence submitted by the applicant that:

(1) there is probable cause to believe that a person is committing, has committed, or is about to commit a particular offense enumerated in Section 4 of this article;

(2) there is probable cause to believe that particular communications concerning that offense will be obtained through the interception; [and]

\* \* \* \* \* \*

(4) there is probable cause to believe that the facilities from which or the place where the wire, oral, or electronic communications are to be intercepted are being used or are about to be used in connection with the commission of an offense or are leased to, listed in the name of, or commonly used by the person[.]

The sworn application for the Navarro County wiretap, dated March 31, 1987, incorporated into it by reference an affidavit, also dated March 31, 1987, of D.P.S. officer George Herbert. Herbert's affidavit, in turn, incorporated by reference another affidavit of his, dated March 23, 1987, which, again in turn, incorporated by reference the February 4, 1987, affidavit of Linda McCallister. All these sworn statements were before Judge Thurman at the time he considered the application.

Putting aside the tainted Ellis County wiretap information, Herbert's allegations were, in relevant part:

(1) Telephone company records revealed that the residential telephone located at Route 1, Box 42, Blooming Grove, i.e. the telephone sought to be tapped, was subscribed to by Josephine Castillo.

(2) Analysis of pen register [5] data for that telephone showed that during the period of March 6–17, 1987, nine calls were made from the Castillo residence to the W.T. Brown residence in Corsicana, Navarro County.

(3) According to information obtained from the Oakland County, Michigan, sheriff's office, a pickup truck registered to W.T. Brown and carrying some 500 pounds of marihuana was involved in an accident in Oakland County on March 14, 1987.

(4) On January 25, 1987, informant Linda McCallister told D.P.S. officer Danny Green that an associate of Ysidro Castillo had once paid her for transporting marihuana for Ysidro Castillo.[6]

(5) On January 27, 1987, McCallister told Herbert that Ysidro Castillo was a trafficker in marihuana.

(6) Ysidro Castillo was known to reside at Route 1, Box 42, Blooming Grove.[7]

In her own affidavit, McCallister alleged in relevant part:

Sometime between the 1st and the 12th of December 1986, Nickey [Rutledge] called me and asked that I come to his house [in Alma, Texas]. When I arrived at Nickey's, Lico Castillo was there. Nickey, Lico and I drove to Ysidro Castillo's house in Blooming Grove. During

---

5. A court-ordered pen register was already in use at the time of the wiretap application. See Tex.Code Crim.Proc. art. 18.21.

6. Admissions against penal interest by an informant are regularly relied upon by police and magistrates as a means of showing that the informant's information is reliable. "Admissions of crime, like admissions against proprietary interest, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). See also *Hennessey v. State,* 660 S.W.2d 87, 91 (Tex.Cr.App.1983).

7. Although Herbert did not explain the source of this particular bit of information, his affidavit contained such a wealth of data about Ysidro Castillo (his height, weight, eye color, hair color, date of birth, Texas driver's license number, D.P.S. number, F.B.I. number, and criminal record) that a magistrate could reasonably infer that Herbert had access to reliable information regarding Ysidro Castillo's residence. Cf. 1 La-Fave, *Search and Seizure* § 3.3(e) (1987). In addition, Herbert's assertion regarding Castillo's address was corroborated by McCallister's affidavit.

the trip to Blooming Grove, Nickey and Lico related how important it was for Ysidro to like me, because Ysidro was the "Big Man" in the marijuana business. They told me how cautious Ysidro was and that he did not trust very many people. Lico told me that if Ysidro did not like me, that I would not be able to make deliveries for them any longer.

When we got to Ysidro's I was really scared because I know how big the Castillo's [sic] are in the drug business and I realized I was getting into something real heavy. At Ysidro's house, Lico went to the door and knocked, no one answered, so we drove through a gate to a small house located on a hill behind Ysidro's house. No one was at the small house, so Lico walked back to the main house. While Lico was gone Nickey told me that Ysidro kept as much as three thousand pounds of marijuana at this place. Nickey also told me that if Ysidro was ever "busted" that he and his family would shoot it out with the police.

While we waited for Lico and Ysidro, I walked in a barn to use the restroom. There was a car, I believe it was a Corvette, covered with a tarp in the barn.

In a few minutes Lico and Ysidro walked up and stood by the car. As Lico and Ysidro talked, Ysidro kept watching me, until he and Lico walked off, at which time Ysidro smiled and winked at me.

Ysidro and Lico walked to a dug out place, that appeared to be covered with a wooden cattle feeder, then motioned for Nickey to join them. Ysidro, Lico and Nickey then removed several (maybe twelve) bags of marijuana from the dug out and carried it to the barn. In the barn they weighed the marijuana [and] then loaded it in the trunk of my car. They loaded over three hundred pounds of marijuana in the trunk, the trunk was full of marijuana.

These sworn allegations were clearly sufficient for the magistrate to find probable cause that individuals involved in the unlawful delivery of marihuana were using the Castillo residence and telephone in their criminal activities. Therefore, Appellants could not have been harmed by the inclusion, in the application for the Navarro County wiretap, of tainted information derived from the unlawful Ellis County wiretaps.

## II

Remaining for our consideration is Appellant's argument that the sworn application (and the affidavits accompanying it) for the Navarro County wiretap failed to explain why investigative procedures other than wiretapping were inadequate to expose Appellants' crime.

Sections 8 and 9 of Article 18.20 provide in relevant part:

§ 8(a) To be valid, an application for an order authorizing the interception of a wire, oral, or electronic communication must be made in writing under oath to a judge of competent jurisdiction and must state the applicant's authority to make the application. An applicant must include the following information in the application:

\* \* \* \* \* \*

(3) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed or be too dangerous if tried[.]

§ 9(a) On receipt of an application, the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, oral, or electronic communications if the judge determines from the evidence submitted by the applicant that:

\* \* \* \* \* \*

(3) normal investigative procedures have been tried and have failed or *reasonably appear to be unlikely to succeed* or to be too dangerous if tried[.]

(Emphasis added.) The evident purpose of these sections is to assure that wiretapping is not utilized in situations where traditional investigative techniques would suffice to expose the crime. See J. Carr, *The Law of Electronic Surveillance* § 4.4(d) (1991) and cases cited therein.

In his order authorizing the Navarro County wiretap, Judge Thurman stated

that "[n]ormal investigative procedures have been tried without success, and appear reasonably unlikely to succeed in developing evidence sufficient to initiate criminal prosecution." In reviewing Judge Thurman's decision, the court of appeals stated:

A DPS officer [George Herbert] outlined in an affidavit accompanying the applications all the investigative procedures that had been tried prior to applying for the two wiretaps. These included the use of informants, attempts to infiltrate the Castillo organization by undercover officers, the use of an electronic transmitter concealed on an informant, ground and air surveillance, the review of a phone call taped by an informant, and analysis of information from "pen registers" and law enforcement records. Although producing some useful evidence against mid-level distributors, which was described in the affidavit, the officer stated that these traditional investigative procedures had failed to penetrate and produce sufficient evidence to convict the hierarchy of the Castillo organization, which was the ultimate goal of the investigation. He also explained why each investigative procedure, including interrogation and search warrants, appeared unlikely to achieve the ultimate goal of the investigation in the future. Each application, which incorporated by reference the affidavit accompanying it, contained a sufficiently complete statement of whether other investigative procedures had been tried and failed or why they reasonably appeared unlikely to succeed in the future.

Slip op. at 13–14.

The record supports the analysis of the court of appeals. Based on the affidavits before him, Judge Thurman could have reasonably concluded that normal investigative procedures reasonably appeared unlikely to succeed, which is all that the statute requires.

The judgment of the court of appeals is AFFIRMED.