NUMBER 13-06-570-CR



COURT OF APPEALS


 

THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


ELISA GILES, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the County Court at Law No. 1


of Williamson County, Texas.


 


MEMORANDUM OPINION



Before Justices Garza, Benavides, and Vela


Memorandum Opinion by Justice Benavides



 Appellant, Elisa Giles, pleaded nolo contendre to the offense of driving while
intoxicated. Tex. Penal Code Ann. § 49.04 (Vernon 2003). The trial court sentenced her
to 180 days' imprisonment in the Williamson County jail and fined her $2,000.00. Giles
reserved her right to appeal the trial court's order denying her motion to suppress
evidence. We affirm the trial court's judgment. 

I. Background

Giles was arrested and charged with driving while intoxicated. See id. Giles filed
a pre-trial motion to suppress evidence obtained after a search of her residence and
challenged her arrest as being illegal. The trial court held a hearing on August 22, 2006. 

Mark Brunner, a Williamson County defense attorney, testified first. He stated that
on April 14, 2006, at around 4:00 p.m., he was driving his car down Sam Bass Road in
Round Rock, Texas. A white Lexus driving in the same direction caught his attention. He
testified that the car was driving erratically, "weaving, almost hitting the right hand
passenger side curb almost three times, and one time actually going up on the curb." 
Brunner followed the Lexus to a residence, where he parked across the street and called
911.

Brunner then watched as the female driver slowly exited the vehicle and stumbled
into the house. Brunner sat and waited for the police to arrive. Before the police arrived,
however, a second vehicle pulled into the driveway of the residence. The vehicle parked
and a male driver, later identified as Carlos Tome, exited the vehicle and began washing
the white Lexus.

Officers Connell and Wentzell of the Round Rock Police Department soon arrived
and spoke with Brunner. Brunner informed the officers that he had observed the Lexus
driving erratically and that he had followed it to the residence. Brunner also told the
officers that he had observed Giles entering the house in a slow, deliberate manner, and
had observed Tome pulling into the driveway. The police then approached Tome. Brunner
testified he could not hear their conversation.


Officer Connell testified second at the hearing. He stated that he received a call
from dispatch reporting erratic driving by a white Lexus. He confirmed Brunner's account
of his arrival, and he further testified about the subsequent events leading to Giles's arrest. 
Officer Connell testified that he approached Tome, who indicated that he resided at the
house. Officer Connell asked Tome about the driver of the white Lexus. Tome told Officer
Connell that the driver, Giles, was his girlfriend. Tome told Officer Connell that Giles had
been at the Roadhouse Bar and that "it was very likely that she was intoxicated at that
time." Officer Connell knew the Roadhouse Bar to be a place where alcoholic beverages
are served. 

Officer Connell then asked to speak to Giles because he was in the process of
conducting an investigation. He testified that Tome was reserved and appeared concerned
about why he needed to speak with Giles. Officer Connell stated that Tome asked again
why he needed to speak with Giles, to which Officer Connell again responded that he was
conducting an investigation. Officer Connell testified that at that point, Tome opened the
garage door and led him through the garage door. Officer Connell stated that at no point
did Tome tell him that he could not come inside the house. He testified that he did not
threaten to arrest Tome if he did not consent to a search. 

Tome led Officer Connell directly to Giles's bedroom. Tome attempted to call
Giles's name through the bedroom door, but she did not respond. Tome then entered her
bedroom and woke her up. Officer Connell asked Giles where she had been and if she
had been driving, to which she answered that she had been at the Roadhouse and had
operated a vehicle. Officer Connell smelled alcohol, and Giles seemed disoriented. 
Officer Connell asked her to come outside, and Giles agreed, following Officer Connell
outside. At no point did Officer Connell inform Giles that she could refuse to follow him
outside. 

Once outside, Officer Connell positioned Giles in front of his patrol car with the video
recorder operating. Giles again informed Officer Connell that she had been at the
Roadhouse and had consumed four vodka martinis. Officer Connell then had Giles
perform standardized field-sobriety tests. She voluntarily performed them in front of Officer
Connell's police car on the public roadway, but she refused the intoxilyzer.

Based on the results of these tests, Officer Connell found Giles to be sufficiently
intoxicated, and he arrested her. Officer Connell testified that he felt it was necessary to
arrest her without a warrant because alcohol metabolizes quickly and because in the
twenty-four hours it would have likely taken him to obtain a warrant, the evidence would
have been lost.

Tome testified to a completely different version of the events. Tome stated that he
arrived home and had begun washing the Lexus when Officer Connell arrived. He testified
that Officer Connell asked him about Giles, and he responded that she was inside the
house sleeping. He stated that Officer Connell asked whether Giles was intoxicated, but
he did not answer the question. Officer Connell asked him to go inside the house, and
Tome responded that he wanted to enter the house by himself to retrieve Giles. At this
point, Tome testified that Officer Connell threatened to bring charges against him for
"obstruction." Tome stated that he tried three times to obtain Officer Connell's consent to
enter the house alone, but Officer Connell would not allow him to leave. 

Tome then entered the residence. Tome testified that Officer Connell threatened
that "if [Tome did] not turn around and go inside, [Tome would] be arrested." Tome stated
that he went inside, and Officer Connell entered right behind him. Tome said that he
noticed Officer Connell following him into the residence after he was about ten to fifteen
feet inside. He then woke Giles and left the room. 

After hearing this testimony, the trial court denied the motion to suppress. The trial
court issued findings of fact and conclusions of law. Of particular importance, the trial court
apparently found Officer Connell's version of the events credible. Regarding Tome's
statements outside the residence, the trial court found the following facts: (1) Tome told
Officer Connell that Giles had been at the Roadhouse Bar and was the driver of the vehicle
reported by Brunner, (2) Tome told Officer Connell that "it was very well likely that she was
intoxicated at that time," (3) Officer Connell knew the Roadhouse Bar to be a place where
alcoholic beverages are served. 

With regard to Officer Connell's entry into the house, the trial court found that Tome
consented to the entry:

 Officer Connell told Tome he was conducting a criminal investigation and
that he wanted to speak with Defendant. Tome appeared reserved and
concerned for the defendant. Thereafter, Tome walked into the residence
through the garage door with the two police officers following him. Tome
was aware the officers were following him into the residence. Tome did not
tell the police officers to leave the residence. Tome exercised his own free
will in leading the police officers into the residence to locate the defendant. 
Officer Connell reasonably believed he had Tome's consent to enter the
residence.


The trial court concluded that Tome voluntarily consented to the entry into his home.


 The court further found, with regard to the arrest, that Giles was not arrested inside
the residence, but she went voluntarily with the officers outside the residence. The trial
court concluded that Officer Connell had probable cause to believe that Giles had
committed DWI, a breach of the peace, and that the location where Giles was arrested was
a suspicious place. 

 On August 26, 2006, Giles entered a negotiated plea of nolo contendere, while
reserving her right to appeal on the motions that were denied. Giles was sentenced to 180
days' imprisonment in the county jail and a $2,000 fine. The sentence was probated for
eighteen months. Giles now appeals. (1)

II. Discussion


 Giles raises two issues for our review: First, did the State fail to sustain its burden
to prove a consensual warrantless entry into the home, and if not, were there exigent
circumstances and probable cause to support entry? Second, was Giles's warrantless
arrest justified? We find that there was no consent to enter the home, but we find that
entry was nevertheless supported by exigent circumstances and probable cause. 
Furthermore, we find her arrest was justified. 

 A. Standard of Review

 In reviewing a trial court's ruling on a motion to suppress, we use a bifurcated
standard of review. Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing
Ford v. State, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005)). We must give almost total
deference to a trial court's determination of the facts that the record supports, particularly
when the trial court's fact findings are based on an evaluation of credibility and demeanor.
Id. (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

 We must also afford the same level of deference to a trial court's ruling on mixed
questions of law and fact if the resolution of those questions turns on an evaluation of
credibility and demeanor. Id. (citing Montanez v. State, 195 S.W.3d 101, 109 (Tex. Crim.
App. 2006)). We review de novo other mixed questions of law and fact that do not depend
upon credibility and demeanor. Id. (citing Montanez, 195 S.W.3d at 107). "An issue does
not involve the credibility and demeanor where evidence is uncontroverted because the
trial court does not have to decide which conflicting testimony deserves more weight." 
State v. Reyna, 89 S.W.3d 128, 130 (Tex. App.--Corpus Christi 2002, no pet.); see also
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Maestas v. State, 987 S.W.2d
59, 62 n.8 (Tex. Crim. App. 1999).

 Additionally, we will sustain the trial court's denial of the motion to suppress "if the
ruling is reasonably supported by the record and correct on any theory of law applicable
to the case." Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing Willover
v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)). We must affirm even if the trial
judge gives the "wrong" reason for the "right" decision. Laney, 117 S.W.3d at 857 (citing
State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)).

 B. Consent to Search

 Searches and seizures inside a home without a warrant are "presumptively
unreasonable." See U.S. Const. amend. IV; Welsh v. Wisconsin, 466 U.S. 740, 749
(1984) (citing Payton v. New York, 455 U.S. 573, 586 (1980)). However, a search can be
performed without a warrant if: 1) there is voluntary consent or 2) probable cause and
exigent circumstances support entry without a warrant. See Schenkloth v. Bustamonte,
412 U.S. 218, 219 (1973) (explaining consent exception); Gutierrez v. State, 221 S.W.3d
680, 685 (Tex. Crim. App. 2007) (noting recognized exceptions to warrant requirement);
State v. Ibarra, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997). 

 Consent must be voluntarily given. Gutierrez, 221 S.W.3d at 686. "The validity of
a consensual search is a question of fact, and the State bears the burden to prove by clear
and convincing evidence that consent was obtained voluntarily." Id. at 688; see also Ohio
v. Robinette, 519 U.S. 33, 40 (1996) (concluding that consent is a question of fact);
Harrison v. State, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006) (stating that clear and
convincing evidence is the burden of proof for voluntariness of consent in Texas). This
burden includes proving that consent was not the result of duress or coercion. Gutierrez,
221 S.W.3d at 686 (citing Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App.
2000)). To determine whether this burden is met, the totality of the circumstances is
examined. Id. at 686-87. 

 The trial court found that Tome voluntarily consented to Officer Connell's entry into
the home. Reviewing the record, and giving the proper deference to the trial court's fact
findings, we hold that as a matter of law, Tome's actions did not constitute consent to
search. Consent may be given in writing, verbally, or through the subject's conduct. See
Jackson v. State, 968 S.W.2d 495, 499 (Tex. App.-Texarkana 1998, pet. ref'd.). Although
no express statement of consent is required, and conduct can suffice, mere acquiescence
to a claim of lawful authority is not sufficient. Carmouche, 10 S.W.3d at 331 (citing Bumper
v. North Carolina, 391 U.S. 543, 548 (1968)). 

 For example, in Gallups v. State, the court found voluntary consent to search where
the defendant "motioned for [the officer] not only to 'come forward' but also to 'come in,'"
and "gestured with his hand being extended out and coming back toward him." 151
S.W.3d 196, 201 (Tex. Crim. App. 2004). In contrast, in Roth v. State, the defendant
opened the door to the premises, turned around, and "looked as though" he wanted the
officers to follow, or at least "didn't mind if they did." 917 S.W.2d 292, 300 (Tex.
App.-Austin 1995, no pet.). In that case, the Austin Court of Appeals held that the
defendant's conduct was mere acquiescence to a show of police authority which was not
a voluntary waiver of the right to be free from a warrantless search. Id. 

 The court of criminal appeals took note of the Roth case in its Gallups opinion. 
Gallups, 151 S.W.3d at 201 & n.6. In Gallups, the court took special notice of the hand
gesture that waived the police officers in the door, finding that this hand gesture
distinguished Gallups from Roth. Id. 

 We believe this case resembles Roth more so than it does Gallups. Compare Roth,
917 S.W.2d at 300, with Gallups, 151 S.W.3d at 201 & n.6. The trial court below held that
Tome voluntarily consented to search, based on the following fact finding: 

 Tome walked into the residence through the garage door with the two police
officers following him. Tome was aware the officers were following him into
the residence. Tome did not tell the police officers to leave his residence. 
Tome exercised his own free will in leading the police officers into the
residence to locate the defendant. Officer Connell reasonably believed he
had Tome's consent to enter the residence.


There was no gesture to accompany the Tome's mere acquiescence to the officers' entry
into the residence. Tome simply turned around and walked inside. Moreover, it is
undisputed that Tome appeared reserved and hesitant before entering the home. Under
these facts, we conclude that the trial court erred in finding that consent had been given
to the officers to enter into the residence. Roth, 917 S.W.2d at 300. 

 C. Exigent Circumstances Exception to the Warrant Requirement


 Having found that Tome did not voluntarily consent to search, we must now
determine if there is any ground to sustain the trial court's order. Laney, 117 S.W.3d at
857. The State argued below that exigent circumstances and probable cause supported
the warrantless entry into Tome's home. See Schenkloth, 412 U.S. at 219; Gutierrez, 221
S.W.3d at 685; Ibarra, 953 S.W.2d at 243. 

 To demonstrate the exigent circumstances exception to the warrant requirement,
the State must first demonstrate probable cause to enter or search the specific location. 
Gutierrez, 221 S.W.3d at 685. Second, the circumstances surrounding the need for the
immediate entry to a particular place must be exigent. Id. Because the trial court found
that Tome gave his voluntary consent for Officer Connell to enter his and Giles's residence,
the trial court did not reach any conclusions regarding the probable cause and exigent
circumstances exception to the Fourth Amendment warrant requirement.

 1. Probable cause 

 Probable cause, in the context of warrantless searches, exists "when reasonably
trustworthy facts and circumstances within the knowledge of the officer on the scene would
lead a man of reasonable prudence to believe that the instrumentality . . . or evidence of
a crime will be found." Id. (quoting Estrada v. State, 154 S.W.3d 604, 609 (Tex. Crim. App.
2005)). Giles raises several arguments against a finding of probable cause, which we
address in turn.

 First, Giles argues that no probable cause existed because Giles had been inside
the house for at least ten minutes and because Officer Connell did not witness the alleged
erratic driving. This argument fails, however, because unsolicited information concerning
a crime in progress provided to the police by a concerned citizen is inherently reliable. 
Gansky v. State, 180 S.W.3d 240, 247 (Tex. App.-Fort Worth 2005, pet. ref'd); see also
Adams v. Williams, 407 U.S. 143, 147 (1972) (holding that an officer is not required to have
personally observed the crime if the witness or informant has an indicia of credibility or
reliability); Marquez v. State, 725 S.W.2d 217, 233 (Tex. Crim. App. 1987) (holding that
information provided by an identified ordinary citizen as a witness is presumed to be
reliable). Therefore, Officer Connell was not required to have seen Giles's erratic driving;
it was sufficient that Brunner saw the driving and reported it, and the trial court did not err
in basing a probable cause finding on Bruner's report to the police. 

 Second, Giles argues that Officer Connell did not have probable cause to enter the
residence because he only had cause to believe that minor, fineable-only, traffic offenses
had been committed. Giles cites to Welsh v. Wisconsin for support. See 466 U.S. 740
(1980). We disagree. 

 In Welsh, the United States Supreme Court decided that a nighttime, warrantless
home arrest of a defendant for drunk driving shortly after he ran his car off the road and
walked home violated the Fourth Amendment. Id. at 754. The Supreme Court held that
the gravity of the offense must be considered when determining whether a warrantless
search or seizure is unreasonable. Id. Because Wisconsin law defined a first drunk-driving
offense as a noncriminal, civil forfeiture offense, the Court held that the intrusion was not
reasonable. Id. Giles's reliance on Welsh is misplaced. In Gallups, the Texas Court of
Criminal Appeals distinguished Texas law from Wisconsin law because, in Texas, a first
drunk driving offense is a jailable criminal offense. 151 S.W.3d at 202 n.7 (citing to Tex.
Penal Code Ann. §§ 12.22, 49.04(b) (Vernon 2003). 

 The trial court found that Tome told Officer Connell that Giles had been at the
Roadhouse Bar and that it was "very likely that she was intoxicated at that time." The trial
court also found that Officer Connell also knew the Roadhouse Bar to be a place where
alcoholic beverages were served. Although Tome denied making this statement, we are
required to defer to the trial court's finding of fact where the witness's credibility is in issue. 
Amador, 221 S.W.3d at 673. Based on Officer Connell's knowledge of Giles's erratic
driving based on Bruner's report, Tome's statement that Giles was inside the house and
likely to be intoxicated, and Tome's information that Giles recently returned from the
Roadhouse Bar, Officer Connell had sufficient information to lead a man of reasonable
prudence to believe that evidence of a crime would be found inside the house. Therefore,
we conclude that Officer Connell had probable cause to enter Tome's residence to search
for evidence of a DWI by Giles. 

 2. Exigent Circumstances

 Regarding the second element, Giles argues that the circumstances were not
exigent because Officer Connell was not in "hot pursuit" of Giles, given that he arrived at
Giles's residence ten minutes after she arrived home and that Officer Connell had not seen
Giles drive erratically. Although Giles's arguments are correct, the "hot pursuit" of a
defendant is not the only possible exigent circumstance. There are three additional,
frequently-recognized categories of exigent circumstances that justify a warrantless entry:
"(1) providing aid or assistance to persons whom law enforcement reasonably believes are
in need of assistance; (2) protecting police officers from persons whom they reasonably
believe to be present, armed, and dangerous; and (3) preventing the destruction of
evidence or contraband." Gutierrez, 221 S.W.3d at 686. The State, in this case, justifies
Officer Connell's entry as exigent in order to prevent the destruction of evidence or
contraband. The State argues that it was necessary for a warrantless entry into Giles's
residence to preserve Giles's blood-alcohol level and the effectiveness of any field sobriety
tests taken. We agree.

 With regard to the possible exigent circumstances, the State must show that the
police could have reasonably concluded that evidence would have been destroyed or
removed before they could obtain a search warrant. McNairy v. State, 835 S.W.2d 101,
107 (Tex. Crim. App. 1991). It is beyond dispute that intoxicants, such as alcohol, are
quickly absorbed into the body. The State argues, therefore, that the time it would have
taken to obtain a warrant would have deprived the State of key evidence because evidence
of Giles's intoxication would dissipate. In Gallups, the Court of Criminal Appeals held that
the immediate retrieval of a blood-alcohol level in a DWI investigation was an "exigent
circumstance" because of the necessity to prevent the destruction of evidence. Gallups,
151 S.W.3d at 202. 

 Officer Connell testified that it was his belief that evidence of Giles's intoxication
would dissipate before he could obtain a warrant. Under Gallups, we conclude that the
need to prevent destruction of evidence of intoxication constitutes an exigent circumstance
that justified Officer Connell's entry into the home. 

 D. Warrantless arrest

 Giles next argues that Officer Connell's warrantless arrest was improper under
Texas Code of Criminal Procedure article 14.03(a)(1) because there was no probable
cause for Officer Connell to have entered her home to obtain evidence and because her
bedroom is not a suspicious place. Tex. Code Crim. Proc. Ann. art. 14.03(a)(1). We
disagree. 

 The authority to arrest without a warrant is controlled strictly by statute. See Dyar
v. State, 125 S.W.3d 460, 462-63 (Tex. Crim. App. 2003). There are a number of
circumstances in which the police may arrest someone without a warrant. See Tex. Code.
Crim. Proc. Ann. arts. 14.01-14.06 (Vernon 2005); see also id. at arts. 8.04 (Vernon
2005). Article 14.03(a)(1) states in pertinent part that "a) any peace officer may arrest,
without warrant . . . 1) persons found in suspicious places and under circumstances which
reasonably show that such persons have been guilty of some breach of the peace." Giles
does not dispute that a DWI would constitute a breach of the peace. (2) Accordingly, we are
only required to determine whether Officer Connell had probable cause and whether Giles
was found in a "suspicious place."

 Giles argues that because Officer Connell entered her home illegally, any evidence
that was obtained should not be considered in our probable cause analysis. As discussed
previously, we have already found that Officer Connell lawfully entered Giles's home in
order to secure evidence of a crime committed. Therefore, any evidence obtained during
Officer Connell's legal search can be used to establish the necessary probable cause for
a warrantless arrest. 

 Probable cause exists "'when the facts and circumstances within an officer's
personal knowledge and of which he has reasonably trustworthy information are sufficient
to warrant a person of reasonable caution in the belief that, more likely than not,' a
particular suspect has committed the crime." Muniz v. State, 851 S.W.2d 238, 251 (Tex.
Crim. App. 1993) (quoting Castillo v. State, 818 S.W.2d 803, 805 n. 4 (Tex. Crim.
App.1991)). "In determining whether probable cause existed for the arrest, we examine
the cumulative information known to all the officers who cooperated in the arrest." Id.
(citing Woodward v. State, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982)). 

 In Dyar, the court found probable cause that Dyar had committed a DWI. 125
S.W.3d at 468. In that case, the officer had been told that the driver of an overturned
vehicle had gone to the hospital. Id. Upon arriving at the hospital, the officer confronted
Dyar and observed that Dyar had slurred speech, red glassy eyes, a strong smell of
alcohol, and that many of his answers to the officer's questions were unintelligible. Id. At
some point during the confrontation, Dyar admitted that he had been drinking and driving.
Id. These facts taken together led the officer to believe the Dyar had committed DWI. Id. 

 Similarly, in Gallups, the court also found probable cause that Gallups had
committed a DWI. Gallups, 151 S.W.3d at 201. In that case, Gallups was found at his
home, which was only a short distance away from an accident site. Id. at 198. Upon
arriving at the scene, the officer observed Gallups standing in the window with blood
around his mouth. Id. The evidence of Gallups having been in an accident, together with
the location of his house, was sufficient to warrant a person of reasonable caution in the
belief that, more likely than not, Gallups had committed a DWI. Id. at 201. 

 In this case, Officer Connell had probable cause to arrest Giles. Brunner followed
the Lexus to the residence after observing erratic driving. Tome informed Officer Connell
that Giles was likely intoxicated and had just returned from the Roadhouse Bar. Once
inside the residence, Officer Connell noticed that Giles smelled of alcohol and seemed
disoriented. He therefore asked her to come outside with him. Giles voluntarily consented
to exiting the house with him. Giles confirmed that she had been at the Roadhouse Bar
and had consumed four vodka martinis. Giles refused the intoxilyzer, but she voluntarily
performed the sobriety tests, all of which she failed. This information taken together is
sufficient to warrant a person of reasonable caution in the belief that, more likely than not,
Giles had committed a DWI. Therefore, we hold that the trial court did not err in finding
that there was probable cause to arrest Giles for a DWI. (3)

 Giles argues that it is not illegal to be intoxicated in your bedroom, therefore, her
bedroom or house is not a suspicious place. Although Giles is correct in stating that it is
not illegal to be intoxicated in your bedroom, we do not agree that her bedroom or house
is not a suspicious place. 

 Few places are in and of themselves suspicious; however, a place may become
suspicious due to facts and circumstances known to the officer and any reasonable
inferences from those facts. Crowley v. State, 842 S.W.2d 701, 703 (Tex. App.-Houston
[1st Dist.] 1992, pet. ref'd.) (citing Johnson v. State, 722 S.W.2d 417, 421 (Tex. Crim. App.
1986)). The determination of whether a place is a "suspicious place" is highly fact specific. 
Id. (citing Holland v. State, 788 S.W.2d 112, 113 (Tex. App.-Dallas 1990, pet. ref'd)).

 In Crowley, the court held that Crowley's garage was a "suspicious place." Id. In
that case, Crowley was a victim of a car accident. Id. The other party in the accident,
Graves, left his vehicle to exchange insurance information, but Crowley made a u-turn and
drove back to his house. Id. Graves followed Crowley back to his house and watched the
house until the police arrived. Id. While waiting for the police to arrive, Graves had not
seen anyone exit or enter the house besides Crowley. Id. The house was found to be
empty, except Crowley was found inside the garage. Id. Because no one could enter or
exit the garage without being seen, Crowley was the logical person to have committed the
offense. Id. Therefore, the court held that the garage was a "suspicious place." 

 Similarly, in Gallups, Gallups's home was found to be a suspicious place. 151
S.W.3d at 201. In that case, Gallups was also involved in a car accident. Id. Instead of
remaining on scene, he walked to his house, abandoning his truck at the scene of the
accident. Id. The court found that the short distance between the accident site and the
house rendered Gallups's house a "suspicious place." Id. 

 And in Dyar, the court found that the hospital where Dyar was confronted by the
officer was a suspicious place. 125 S.W.3d at 467. The officer had been informed that
the driver of the vehicle was taken to the hospital; and "this information would tend to make
a hospital a suspicious place in which to seek the driver who was suspected of causing the
accident." Id. 

 Conversely, in Lowery v. State, the court found that Lowery's apartment was not a
"suspicious place". 499 S.W.2d 160, 164 (Tex. Crim. App. 1973). In that case, Lowery
was arrested as a participant in a burglary. Id. at 162. Although a warrant was issued for
Lowery in that case, the warrant was declared invalid and therefore the court examined
whether Lowery could have been arrested under Texas Code of Criminal Procedure
14.03(a)(1). Id. at 164. At the conclusion of its analysis, that court held that there was "no
evidence of how the officers knew [Lowery] was at that location, nor is there evidence
concerning the circumstances of his presence there. If the officers knew of unusual
conditions under which [Lowery] was in the apartment, they did not disclose these facts at
trial and there is no way to conclude the officers arrested [Lowery] in a suspicious place
or under suspicious circumstances apart from their well founded belief that he had
committed a serious crime." Id. at 164-65. 

 In this case, we hold that Giles's bedroom or home constituted a suspicious place. 
Brunner saw Giles driving erratically, and followed the white Lexus to the residence, where
he saw Giles exit in a slow, deliberate manner. Officer Connell was told by dispatch that
Giles was the resident at this location and the owner of a Lexus. Giles also matched the
description of the driver that Brunner gave to dispatch. Finally, Tome confirmed that Giles
had recently returned home from the Roadhouse Bar, was likely intoxicated, and was
asleep in her bedroom. Because Officer Connell provided evidence describing how he
connected Giles with the crime, like the officers in Crowley, Gallups, and Dyar, and unlike
the officers in Lowery, Giles's residence became a suspicious place. 

 In conclusion, we hold that Officer Connell had the authority to arrest Giles without
a warrant because there was sufficient probable cause that Giles had committed the DWI,
her house was a suspicious place, a DWI is a breach of the peace, and there were exigent
circumstances in allowing Officer Connell into Giles's residence. With all the elements of
a proper warrantless arrest met, the trial court did not err in denying Giles's motion to
suppress. 

III. Conclusion

We hold that Officer Connell's action in entering Giles's residence without a search
warrant was not justified under the entry with consent exception. We find, however, that
Officer Connell was justified in entering Giles's residence under the exigent circumstances
exception to the warrant requirement. We also hold that Officer Connell was justified in
arresting Giles without a warrant because there was probable cause to believe that Giles
had committed the DWI, that Giles's residence was a suspicious place, and a DWI
constitutes a breach of the peace. Accordingly, the trial court did not err in denying Giles's
motion to suppress. 

Therefore, we AFFIRM.


 __________________________

 GINA M. BENAVIDES

 Justice


Do not publish.

See Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and

filed this the 23rd day of August, 2007.

1. The Texas Supreme Court transferred this case from the Third Court of Appeals to the Thirteenth
Court of Appeals. Tex. Gov't Code Ann. § 73.001 (Vernon 1998).
2. The Texas Court of Criminal Appeals has held that driving while intoxicated is a breach of the peace.
Gallups, 151 S.W.3d at 201 (citing Romo v. State, 577 S.W.2d 251, 253 (Tex. Crim. App. 1979)). 
3. Giles briefly claims that although she voluntarily consented to following Officer Connell outside the
house, Officer Connell never informed her that she was not required to do so. She did not, however, cite to
any proper authorities in support of her contention. According to rule 38.1(h) of the Texas Rules of Appellate
Procedure, we will only consider issues that are supported by clear and concise arguments with appropriate
citations to authorities and to the record. Tex. R. App. P. 38.1(h). Accordingly, we will not address this
argument.