MEMORANDUM OPINION



Nos. 04-06-00630-CR, 04-06-00631-CR, 04-06-00632-CR, 

04-06-00633-CR, 04-06-00634-CR, 04-06-00635-CR 

Melchor HAWKINS, Jr.,


Appellant



v.



The STATE of Texas,


Appellee



From the 79th Judicial District Court, Jim Wells County, Texas


Trial Court Nos. 06-01-11867-CR through 06-01-011872-CR

Honorable Ricardo H. Garcia, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: September 19, 2007


AFFIRMED

 In two issues, Melchor Hawkins, Jr., appeals his convictions for aggravated sexual assault
(four counts), sexual performance by a child, and possession of child pornography. We affirm the
judgments of the trial court.



Background

 In the fall of 2005, the complainant, "Jane Doe," (1) was 12 years old when she began taking
karate lessons from Hawkins at his karate studio in Orange Grove, Texas. On December 20, 2005,
Jane's mother dropped her and her brother off at the karate studio 15 minutes early. That evening,
Jane was taking a bath when she called her mother in and told her what had happened at karate class
that day. Jane told her mother that Hawkins took her inside a room, kissed her, made her lie down
on a mattress and put his penis next to her vagina. He made Jane put his penis in her mouth and also
put his penis "up to her butt." Hawkins then showed Jane a book entitled "Sexual Poses" and asked
her to pick out a position. Jane told her mother that she believed Hawkins had recorded the incident
because there was a video recorder in the room, and Jane noticed that the recording light was
flashing. Additionally, Hawkins had kissed Jane, and pulled her shirt up and her pants down, during
a lesson on December 15, 2005. Jane's mother immediately called the Orange Grove Police
Department; officers arrived at the family's home to take written statements from Jane and her
mother. Jane's mother gathered the clothing Jane had worn that day to give the officers, but noticed
her underwear was missing. Jane told her mother that Hawkins had told her to leave her underwear
under the mattress in the room where he had assaulted her. Jane was then taken to the hospital for
a physical examination.

 The next morning, Texas Ranger Robert Garza obtained a search warrant for Hawkins'
Orange Grove karate studio. The search warrant included a warrant for the arrest of Hawkins for the
offense of aggravated sexual assault. Garza's affidavit set forth the following evidence as the subject
of the search:

 The victim's panties, described as grayish blue and with thin multi-colored pin
stripes, suspect's red shirt, a red mattress with accompanying sheets and bedding, a
camera and/or video camera along with any recorded media to include VHS tapes
and/or digital video disks (DVD), computers and any computer peripherals, to
include related computer components including computer tapes and records,
magnetic tapes, disks, diskettes, floppy disks and the like, magazine or book with
black and white drawings of sexual poses, forensic and trace evidence to include but
not limited to, fingerprints, fibers, body fluids, hairs, blood, and semen.


The affidavit also recited at length the statements Jane and her mother gave to the Orange Grove
Police Department. Upon searching the Orange Grove karate studio, at which Hawkins was not
present, police seized a man's red shirt, a maroon mattress, a book entitled Sexual Positions, 45 VHS
videotapes, and papers containing a roster of karate students; however, Jane's panties and a
videotape of the alleged assault against her were not located. Ranger Garza then learned that
Hawkins also maintained a second karate studio in Kingsville, Texas, which was also assumed to
be his residence. Garza traveled to Kingsville to arrest Hawkins. When officers knocked on the
door, Hawkins answered and was arrested outside the residence. Garza asked for consent to search
the studio/residence, but Hawkins declined. Garza then observed a lit candle behind a wicker
privacy screen at the entrance of the residence; he informed Garza that the candle would have to be
extinguished before they took him away. Garza accompanied Hawkins inside to blow out the candle,
and noticed several VHS tapes and a computer and related equipment. None of the items were
seized at that time. 

 Thereafter, Garza obtained a second search warrant for Hawkins' studio/residence in
Kingsville. Just like the first warrant, this warrant authorized Garza to search for "the victim's
panties, . . . a camera and/or video camera along with any recorded media to include VHS tapes
and/or digital video disks [sic] (DVD), computers and any computer peripherals to include related
computer components . . . ." Garza's affidavit for the second search warrant was the same as the
previous one, except for the addition of a paragraph detailing the search of the Orange Grove studio: 

 On the evening of 12-21-2005, affiant and Orange Grove Police executed a search
and arrest warrant at the said suspected party's business. . . . Evidence was found 
. . . that corroborates the victim's written statement. . . . The victim's panties and the
suspected party's video camera [were] not located. . . . The investigation later
revealed that the suspected party was staying at his other place of business and/or
residence in Kingsville. . . . The suspected party was arrested without incident at [the
Kingsville studio/residence]. . . . The affiant was able to observe several VHS tapes
and a computer and computer equipment and components at this same location.


On December 22, 2005, officers searched the Kingsville studio/residence pursuant to the second
warrant and seized Jane's panties, a VHS tape depicting the sexual assaults upon her, a framed
photograph of Jane, and a package of 15 photographs that included 8 photographs of Jane. 

 Hawkins filed a motion to suppress the evidence seized at his Kingsville studio/residence
pursuant to the second warrant, which was denied by the trial court after a hearing. (2) Hawkins
subsequently filed a motion to recuse the trial judge; the motion was heard by the Honorable Noé
González and was also denied. On appeal, Hawkins complains of the denial of these two motions.

Motion to Suppress

 Hawkins filed a motion to suppress, urging the court to suppress all evidence seized in the
search of the Kingsville premises "without a valid warrant and without probable cause." Because
the trial court's denial of the motion to suppress involved evidence seized pursuant to a search
warrant, we apply a deferential standard of review, giving deference to the magistrate who reviewed
the affidavit for the search warrant. Swearingen v. State, 143 S.W.3d 808, 811 (Tex. Crim. App.
2004) (holding that de novo standard articulated in Guzman v. State, 955 S.W.2d 85 (Tex. Crim.
App. 1997), applies when reviewing a warrantless search, while a deferential standard is used when
reviewing a search pursuant to a warrant); Pool v. State, 157 S.W.3d 36, 40-41 (Tex. App.--Waco
2004, no pet.) (same). To determine whether the magistrate's decision to issue the search warrant
was proper, the measure is the "totality of the circumstances." Johnson v. State, 803 S.W.2d 272,
288-89 (Tex. Crim. App. 1990), overruled on other grounds, Heitman v. State, 815 S.W.2d 681, 685
n.6 (Tex. Crim. App. 1991). So long as the magistrate had a substantial basis for concluding that
a search would uncover evidence of wrongdoing, the affidavit is sufficient. Illinois v. Gates, 462
U.S. 213, 236-37 (1983); Johnson, 803 S.W.2d at 289. 

 Hawkins contends the warrant issued to search the Kingsville premises was invalid because
the underlying affidavit included observations Garza made while illegally inside the Kingsville
studio/residence, and therefore was not based on probable cause. Because Garza's affidavit
supporting the second search warrant is virtually identical to his affidavit for the first search warrant,
of which Hawkins does not complain, we construe his complaint to be specific to this one additional
sentence: "The affiant was able to observe several VHS tapes and a computer and computer
equipment and components at this same location." 

 Assuming, without deciding, that Garza's entry of the Kingsville studio/residence was illegal,
we must determine whether the inclusion in the affidavit of one sentence summarizing his
observations rendered the resulting search warrant invalid. Castillo v. State, 818 S.W.2d 803, 805
(Tex. Crim. App. 1991), overruled on other grounds, Torres v. State, 182 S.W.3d 899, 902 (Tex.
Crim. App. 2005) (citing Brown v. State, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980), for the
holding that warrant issued on the basis of affidavit that included tainted information is nonetheless
valid if warrant clearly could have been issued on the basis of untainted information in affidavit). 

In determining the sufficiency of an affidavit for a search warrant, we are limited to the "four corners
of an affidavit." Hankins v. State, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004); Jones v. State, 833
S.W.2d 118, 123 (Tex. Crim. App. 1992). Article 18.01(c) of the Code of Criminal Procedure
provides that an affidavit supporting a search warrant must set forth sufficient facts to establish
probable cause:

 (1) that a specific offense has been committed, (2) that the specifically described
property or items that are to be searched for or seized constitute evidence of that
offense or evidence that a particular person committed that offense, and (3) that the
property or items constituting evidence to be searched for or seized are located at or
on the particular person, place, or thing to be searched. . . .


Tex. Code Crim. Proc. Ann. art 18.01(c) (Vernon 2005). Hawkins does not advance a complaint
as to the first two elements; therefore, our discussion is limited to whether the affidavit set forth
sufficient facts to establish probable cause that the items to be seized were located at the Kingsville
premises. "Probable cause exists where the facts submitted to the magistrate are sufficient to justify
a conclusion that the property that is the object of the search probably is on the person or premises
to be searched at the time the warrant issues." Hass v. State, 790 S.W.2d 609, 612 (Tex. Crim. App.
1990) (quoting Gish v. State, 606 S.W.2d 883, 886 (Tex. Crim. App. 1980)). The magistrate is
allowed to draw reasonable inferences from the facts alleged. Ramos v. State, 934 S.W.2d 358, 363
(Tex. Crim. App. 1996); Wachter v. State, 961 S.W.2d 598, 600 (Tex. App.--San Antonio 1997, pet.
ref'd). 

 The first search warrant authorized Garza to search for Jane's panties and a VHS tape of the
alleged assault against her, among other items. Probable cause to search for these items was
established by section 4 of Garza's affidavit, which detailed the statements Jane and her mother gave
concerning the sexual assault. The section specifically stated that Jane believed Hawkins filmed the
December 20, 2005 assault because "the camera was on and it had a red flashing light." 
Additionally, Jane stated that Hawkins told her to "leave her underwear under the mattress." Section
4 of the second probable cause affidavit used to secure a search warrant for the Kingsville
studio/residence contained the same information as in section 4 of the first affidavit, namely that
Hawkins had videotaped the incident and that Jane had left her underwear under the mattress. It
further stated that the panties and video camera were not found at the Orange Grove studio. The
second affidavit additionally recited that Hawkins was arrested at the Kingsville studio/residence,
which was described as having a side entrance door with lettering reading "Master Hawkins Karate." 
 After reviewing the affidavit for probable cause by evaluating the facts under the totality of
the circumstances, and giving appropriate deference to the magistrate's decision, we conclude that
even without the last sentence summarizing Garza's observations while inside the premises, the
affidavit contains sufficient facts to conclude that it was more probable than not that Garza would
uncover evidence of the assault against Jane on the Kingsville premises. Castillo, 818 S.W.2d at
805; Brown, 605 S.W.2d at 577. Given the nature of the offense, the items retrieved from the
Orange Grove studio, and Hawkins' presence and arrest at the Kingsville studio/residence a day after
the assault, the second affidavit was sufficient to show a probability that evidence of the crime would
be found in the Kingsville studio/residence. Accordingly, the trial court did not err in denying the
motion to suppress, and Hawkins' first issue is overruled. 


 


Motion for Recusal

 On June 2, 2006, Hawkins filed a motion to recuse the trial judge, contending that 1) the
judge had a personal bias against him, and 2) the judge's adverse rulings on his motion for bond
reduction and motion to suppress further showed the judge's bias against him. Four days later, the
Honorable Noé González was appointed to hear Hawkins' motion to recuse. A hearing was held on
the motion on June 8, 2006, and Judge González denied the motion that same day. On appeal,
Hawkins argues that Judge González abused his discretion in failing to hold a hearing on the recusal
motion as required by Rule 18a. See Tex. R. Civ. P. 18a. The record before us, however, clearly
demonstrates that Judge González did hold a hearing on the motion to recuse on June 8, 2006. 
Hawkins himself testified at length at the hearing. Because Hawkins' only appellate complaint as
to the motion to recuse was the alleged failure to hold a hearing, we need not address whether Judge
González abused his discretion in denying the motion to recuse. The record clearly shows a hearing
on the motion was held in accordance with Rule 18a; therefore, we overrule Hawkins' second issue. Based on the foregoing reasons, we affirm the trial court's judgments. 

 

 Phylis J. Speedlin, Justice

DO NOT PUBLISH

1. Prior to trial, the complainant executed a pseudonym form pursuant to article 57.02 of the Texas Code of
Criminal Procedure. Tex. Code Crim. Proc. Ann. art 57.02 (Vernon 2006). 
2. The signed order denying the motion to suppress is only included in the clerk's record for trial court cause
number 06-01-11867-CR (appeal number 04-06-00630-CR); accordingly, we take judicial notice of the signed order in
each of the other five causes.